PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

DALE MCCOURTNEY HODGE, a/k/a
Dedan Kimathi Wilson, a/k/a Keith
Jackson,
           *Defendant-Appellant.*

No. 02-4430

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry Coke Morgan, Jr., District Judge.
(CR-01-233)

Argued: October 30, 2003

Decided: January 6, 2004

Before WILKINS, Chief Judge, and NIEMEYER and
SHEDD, Circuit Judges.

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Niemeyer and Judge Shedd joined.

## COUNSEL

**ARGUED:** James Orlando Broccoletti, ZOBY & BROCCOLETTI, P.C., Norfolk, Virginia, for Appellant. James Ashford Metcalfe, Assistant United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Norfolk, Virginia, for Appellee.

**OPINION**

WILKINS, Chief Judge:

Dale McCourtney Hodge appeals his convictions and sentence for possession of a firearm and ammunition by a convicted felon, *see* 18 U.S.C.A. § 922(g)(1) (West 2000), and possession of cocaine with the intent to distribute, *see* 21 U.S.C.A. § 841(a)(1) (West 1999). Finding no error, we affirm.

I.

In 1996, two police officers from New York State, Detectives Andre Collins and Russell McCormick, met Hodge during an undercover drug investigation. During three separate transactions in January 1996, Collins purchased cocaine base from Hodge for a total price of $3,300. Hodge was indicted on New York state charges, and an arrest warrant was issued. At that time, however, officers were unable to locate Hodge to execute the warrant.

Eventually, Collins learned that Hodge was living in Newport News, Virginia, under the alias Dedan K. Wilson. Collins subsequently met several times with an informant who claimed to have more information about Hodge. The informant told Collins during the week of June 21, 1999 that Hodge had previously lived in Newport News but had moved to Suffolk, Virginia, to an apartment registered in a woman's name. The informant also related the number of the telephone located at the apartment. The informant told Collins that Hodge regularly traveled up and down the East Coast trafficking in narcotics; had no legal means of income; drove a dark green Jeep that had a secret compartment to hide drugs and firearms; kept large sums of cash in his closet; used the aliases Keith Jackson and Dedan Wilson; was generally armed; and planned to be in Mt. Vernon, New York on June 24, 1999 and to return to Virginia three days later.

On June 29, 1999, Collins, McCormick, and their supervisor traveled to Newport News, where they learned that the phone number provided by the informant was assigned to "G. Henry" at a particular

address in Suffolk, Virginia. Collins called the number and recognized Hodge's voice on the answering machine. Police officers from New York and Virginia then began surveillance at the Suffolk address on June 30, 1999. The next day, officers saw a dark green Jeep parked outside. Lieutenant Timothy Davenport of the Suffolk Police Department checked Department of Motor Vehicle records and learned that the vehicle was registered to Keith Jackson of Virginia Beach.

In an effort to trick Hodge into coming to the door, officers staged a fake traffic accident involving the Jeep and approached the apartment. However, as uniformed officers approached the door, Davenport and McCormick saw a man—whom McCormick recognized as Hodge—flee from the back of the apartment. The officers gave chase, but Hodge escaped.

Collins and another officer returned to the apartment and noticed that the sliding glass door was open. After determining that an Anthony Brooks was inside, they entered the apartment "to clear and secure it and to talk to" Brooks. J.A. 104. Brooks told the officers that he rented a room from Keith Jackson.

Based on the information the officers had compiled, Davenport and Collins then obtained a state search warrant for the apartment and the Jeep. When executing the warrant, officers recovered Hodge's New York driver's license bearing his photograph as well as numerous items tending to show that Hodge, Wilson, and Jackson were the same person. Other items seized during a search of the apartment included two cellular telephones, digital scales bearing cocaine residue, a loaded Ruger 9mm semi-automatic pistol and spare ammunition, an electronic money counting machine, $2,062 in $1 bills, and $46,590 in a plastic bag within a safe. Inside a hidden compartment within the Jeep, officers recovered $200 in cash, two vials containing a total of 1.2 grams of marijuana, and a plastic bag containing 168 grams of cocaine.

Hodge was subsequently arrested in New York and released on bond. After failing to appear on the New York charges, he was arrested on Virginia charges in April 2000. A federal grand jury named Hodge in a three-count indictment, charging him with possession of a firearm and ammunition by a convicted felon ("Count One"),

possession of cocaine with the intent to distribute ("Count Two"), and possession of a firearm in furtherance of a drug trafficking crime ("Count Three").

Hodge moved unsuccessfully to suppress the evidence seized during the execution of the search warrant on the ground that the warrant was not supported by probable cause. Following a jury trial, Hodge was found guilty of Counts One and Two; a mistrial was declared on Count Three. The district court sentenced Hodge to 120 months imprisonment on Count One and 324 months on Count Two, to be served concurrently.

## II.

Hodge first argues that the district court erred in refusing to suppress the evidence obtained from execution of the search warrant. We disagree.

The Fourth Amendment provides in pertinent part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386, 390 (1985). Although we review de novo the denial of the motion to suppress by the district court, the determination of probable cause by the issuing magistrate is entitled to great deference from this court. *See United States v. Wilhelm*, 80 F.3d 116, 118-19 (4th Cir. 1996). Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (alterations & internal quotation marks omitted).

As the Supreme Court has noted, "probable cause is a fluid concept —turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. Although noting that probable cause is not susceptible to precise definition, the Supreme Court has described it as "existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evi-

dence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *see also Gates*, 462 U.S. at 238 (explaining that a probable cause inquiry involves a determination of "whether, given all the circumstances . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place"). And, in order to establish probable cause for the issuance of a search warrant based in part on an informant's hearsay, it is necessary to consider "all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Gates*, 462 U.S. at 238. The degree to which an informant's story is corroborated may also be an important factor. *See United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993).

Here, the search warrant application was prepared by Lieutenant Davenport, and it relied primarily on information provided by Collins. The application described Collins' informant as having "provided information to Det. Andre Collins in the past that has been co[r-ro]borated and found to be accurate by Det. Collins." J.A. 102. It recited the informant's allegations of Hodge's criminal activity as well as the officers' confirmation of the facts that Hodge and Jackson were the same person, that Hodge drove a dark green Jeep, and that Hodge had the phone number that the informant had provided. It also reported that Hodge had fled from his apartment when the officers approached after staging the traffic accident.

Hodge correctly notes that the affidavit underlying the warrant gave no indication of how the informant claimed to know about Hodge's criminal activity and that it did not describe the nature or amount of correct information the informant had supplied in the past. This point notwithstanding, the present case is controlled by our decision in *United States v. Porter*, 738 F.2d 622 (4th Cir. 1984) (en banc), in which we concluded, on facts less favorable to the government, that probable cause existed.

In *Porter*, an anonymous informant alerted authorities on a Saturday that a person named Penny Porter was flying from Washington National Airport to Miami that evening and would be returning with cocaine. *See Porter*, 738 F.2d at 623. The informant reported that Porter was a black woman between 5′3″ and 5′7″ and between 115 and 125 pounds, with long brown hair, wearing a brown leather coat and

a red miniskirt, and carrying a large gold-colored purse. *See id.* The informant also provided information, not described in the record, concerning a person other than Porter. *See id.* A police detective confirmed that a "T. Porter" had flown out of National Airport to Miami that evening and also confirmed the information concerning the other person. *See id.*

Two days after the original tip, the anonymous informant contacted authorities and stated that Porter would be flying back into Washington that afternoon. *See id.* While watching passengers at National Airport disembarking on a flight from Miami at about 3:30 p.m., the detective observed a woman matching the physical description provided by the informant and wearing a brown leather coat. *See id.* The detective did not see the miniskirt or the gold purse. *See id.* at 624. The woman was one of the last passengers off the plane, she appeared nervous, and she watched the officer continuously as she walked. *See id.* When the detective approached her, the woman identified herself as "Teresa Porter" and said that she was flying in from Miami. *See id.* We held that, based on the evidence in his possession at that time, and in particular, the amount of informant information he had been able to corroborate, the detective had probable cause to arrest Porter. *See id.* at 625-26.

A comparison of the information in the detective's possession in *Porter* with that available to the magistrate here demonstrates that probable cause supported issuance of the warrant. To begin, the amount of corroborated informant information in the two cases was comparable. In *Porter*, although the informant had not predicted Porter's use of the name "Teresa Porter," the detective confirmed that a person named Porter flew out of Washington National on the Saturday evening that the information was provided and that a woman who had the same name and who fit the physical description provided by the informant flew back from Miami on the following Monday afternoon. The detective in *Porter* also confirmed that the subject was wearing a brown leather jacket as the informant said she had been wearing on her flight to Miami. In comparison, here, the officers confirmed that the informant correctly identified both Hodge's real name and the name he was using in Virginia. *Cf. Lalor*, 996 F.2d at 1581 (concluding that informant's knowledge of defendant's alias increased reliability of informant's information); *United States v. Biz-*

*zard*, 674 F.2d 1382, 1388 (11th Cir. 1982) (same). Law enforcement also confirmed that Hodge had the phone number that the informant had provided and drove a dark green Jeep. While it is of considerable significance that the informant in *Porter* was able to predict future actions by the subject of his information and the informant here made no such predictions, *see Gates*, 462 U.S. at 245-46, the level of corroboration of the two informants' accounts was otherwise comparable.

On the other hand, the relationship between the respective informants and law enforcement is more favorable to a probable cause determination in the present case. While the informant in *Porter* was anonymous, the warrant application here stated that the informant "had provided information to . . . Collins in the past that [was] co[r-ro]borated and found to be accurate." J.A. 102. Because "a proven, reliable informant is entitled to far more credence than an unknown, anonymous tipster," this difference is significant. *United States v. Bynum*, 293 F.3d 192, 197 (4th Cir. 2002).

Finally, the facts discovered by law enforcement here, independent of their corroborative value, were more suggestive of the criminal activity alleged by the informant than were the facts in *Porter*. In *Porter*, the detective had no information that Porter had any history of criminal activity. And, a two-day trip to Miami is not especially suspicious in itself, although it became more so when viewed in conjunction with Porter's nervous appearance. In comparison, the affidavit in the present case importantly recounted that Hodge "was wanted on charges of distributing cocaine to Detective Collins during an undercover operation." J.A. 103; *see Bynum*, 293 F.3d at 197 ("An officer's report in his affidavit of the target's prior criminal activity or record is clearly material to the probable cause determination. . . ." (internal quotation marks omitted)). It is also significant that the affidavit stated that Hodge was using an assumed name and that Hodge had recently fled the premises when officers had approached his apartment, *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.").

For all of these reasons, viewing the circumstances as a whole, we conclude that the information possessed by the magistrate here more strongly suggested that the informant's criminal allegations were correct than did the information possessed by the detective in *Porter*. Considering that we determined that probable cause existed in *Porter*, we have little trouble concluding that the information in the affidavit here provided at least a "substantial basis" for the magistrate's probable cause determination. *Gates*, 462 U.S. at 238 (internal quotation marks omitted). We therefore hold that the district court correctly refused to suppress the fruit of the resulting search.[1]

### III.

Hodge next contends that the district court erred in admitting evidence of his 1996 drug transactions. We disagree.

Federal Rule of Evidence 404(b) provides that evidence of prior bad acts may be admissible for purposes other than "to prove the character of a person in order to show action in conformity therewith." Such purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Evidence of prior bad actions is admissible under Rule 404(b) if the evidence is (1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable. *See United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). Additionally, the probative value of the

---

[1]Hodge argues that Davenport's affidavit did not support the probable cause finding because the affidavit stated "that the officers had searched the residence once already and found no evidence of a drug crime present." Br. of Appellant at 11. In fact, the affidavit stated only that after Hodge fled when the officers approached his apartment, "[t]hey entered the residence to clear and secure it." J.A. 103-04. Nothing in the affidavit suggested that the search the officers undertook was so thorough that it would have revealed hidden evidence of drug trafficking.

Hodge also suggests that the affidavit was insufficient because it did not explain why Detective Collins should be considered to be reliable. However, statements of other law enforcement officers "are plainly . . . reliable" even without any special showing. *United States v. Ventresca*, 380 U.S. 102, 111 (1965).

evidence must not be substantially outweighed by the danger that it will cause unfair prejudice. *See* Fed. R. Evid. 403; *Queen*, 132 F.3d at 997. Limiting jury instructions explaining the purpose for admitting prior bad acts evidence and advance notice of the intent to introduce such evidence provide additional protection to defendants. *See Queen*, 132 F.3d at 997. We review the admission of evidence for abuse of discretion. *See id.* at 995.

Hodge does not challenge the reliability of the admitted evidence. Rather, he contends that it was irrelevant, unnecessary, and unduly prejudicial. We conclude, however, that the evidence of Hodge's 1996 drug transactions was relevant and necessary in that it tended to show the existence of a continuing narcotics business and therefore to show Hodge's knowledge of the drug trade and his intent to distribute the cocaine found in his Jeep. *See United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997) (holding that a not-guilty plea places defendant's intent at issue, and evidence of similar prior crimes can thus be relevant to prove intent to commit charged crime); *United States v. Clarke*, 24 F.3d 257, 264-65 (D.C. Cir. 1994) (holding that evidence that defendants had participated in several prior drug transactions was properly admitted to establish defendant's intent to distribute narcotics). We also conclude that the probative value of the evidence was not substantially outweighed by the danger that it would cause unfair prejudice. In light of the substantial evidence of drug activity found in Hodge's apartment and Jeep, and the evidence that Hodge had used at least two aliases, we conclude that there was no genuine risk that the testimony regarding the 1996 controlled drug purchases would excite the jury to irrational behavior. Moreover, the district court instructed the jury that "evidence of other crimes, wrongs, or acts is not proof that [Hodge] committed the offenses as alleged in the indictment. However, you may consider such evidence in determining motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." J.A. 377. We therefore conclude that the district court acted within its discretion in admitting the evidence.

IV.

Laboratory analysis of the cocaine base Collins purchased from Hodge in 1996 showed that the quantity totaled 163.1 grams. Over

Hodge's objections, the district court included this quantity as relevant conduct for purposes of calculating his sentencing guidelines range. Hodge now argues that inclusion of this quantity was error, maintaining that the 1996 drug transactions were not related to the drug trafficking offense in Virginia and therefore could not be considered relevant conduct under *U.S. Sentencing Guidelines Manual* § 1B1.3 (2001). We disagree.

The sentencing guidelines establish that certain relevant conduct may be considered in determining the guidelines range for a criminal defendant. *See generally* U.S.S.G. § 1B1.3. When a defendant has committed multiple offenses similar to the charged offense, all conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction" constitutes relevant conduct. U.S.S.G. § 1B1.3(a)(2). Application Note 9(B) states that offenses are within the "same course of conduct" when "they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." Unlike "common scheme or plan," the concept of "same course of conduct" does not require that acts be connected together by common participants or by an overall scheme. *See* William W. Wilkins, Jr. & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C. L. Rev. 495, 515 (1990). Rather, it requires only that the defendant has engaged in an identifiable pattern of certain criminal activity. *See id.* at 515-16. Significant factors used to determine whether offenses are part of the same course of conduct "include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3, comment. (n.9(B)); *see United States v. Pauley*, 289 F.3d 254, 259 (4th Cir.) (explaining that to determine whether conduct outside the count of conviction is part of the same course of conduct, the sentencing court must consider several factors to decide whether they indicate a pattern of behavior: "the nature of the defendant's acts, his role, and the number and frequency of repetitions of [his] acts" (internal quotation marks omitted)), *vacated in part on reh'g*, 304 F.3d 335 (4th Cir. 2002) (per curiam), *cert. denied*, 537 U.S. 1178 (2003). When one factor is absent, "a stronger presence of at least one of the other factors is required." U.S.S.G. § 1B1.3, comment. (n.9(B)); *see Pauley*, 289 F.3d at 259. We review an application

of this test by the district court for clear error. *See Pauley*, 289 F.3d at 260.

In finding the 1996 drug transactions to be relevant conduct, the district court stated,

> There's no evidence whatsoever that [Hodge] had any gainful employment. . . .[2] There's no evidence that he worked in New York or anywhere else. There is evidence that he dealt drugs, and even if he did work, that would not suggest that he would have almost $48,000 in cash stashed in this residence in Virginia.
>
> As far as the relevancy of the sales in New York are concerned, again, there's no evidence that he did anything except sell drugs from '96 to '99. And it does appear to the court that that is part of the same regime or scheme or conduct. That's what he was. He was a drug dealer. He was a drug dealer in New York. He was a drug dealer in Virginia. There's evidence to indicate that he dealt drugs in other places in between.
>
> He fled New York to come to Virginia and to sell drugs here, and to say that that's totally unconnected is not persuasive to the court, and there's no evidence to support it, so the court also believes that the sales in New York are related to the count of conviction in Virginia.

J.A. 462-63. Although it was not specifically articulated by the court, it appears that the court concluded that the 1996 drug transactions and the 1999 offense were part of the same course of conduct in that they were part of the same "ongoing series of offenses." U.S.S.G. § 1B1.3, comment. (n.9(B)). We conclude that this ruling was not clearly erroneous.

---

[2]Hodge uses this sentence to argue that the district court improperly placed the burden on him to prove that the 1996 drug buys were not relevant conduct. However, we construe the sentence to refer merely to Hodge's failure to rebut Collins' testimony that his informant told him that Hodge "had no legal means of gaining income." J.A. 50.

The evidence of similarity of the uncharged conduct to the 1999 offense was neither especially strong nor especially weak. Although the record here does not establish how Hodge obtained the cocaine found in his Jeep, how he intended to distribute it, or whether he intended to distribute it in powder or cocaine base form, both the 1996 sales and the 1999 offense related to Hodge's continuing distribution of a form of cocaine up and down the East Coast.[3]

As for regularity, the district court found that the 1996 transactions and the 1999 offense were not isolated occurrences, but rather, part of a continuous pattern of narcotics trafficking. Indeed, the record strongly supported this finding. Detective Collins testified that his informant gave him "detailed information regarding . . . Hodge traveling from New York, Suffolk County, to Upstate New York, also down to Virginia and North Carolina in the process of dealing drugs, and that he had no legal means of gaining income." J.A. 50. Detective Collins testified that Hodge's drug business in Virginia was related to the New York sales in that Collins "had received information that . . . Hodge was selling cocaine on the Eastern Seaboard from Upstate New York to Virginia, as well as North Carolina, transporting cocaine." *Id.* at 168-69. Finally, Collins further testified based on "information from other police officers as well as a confidential informant that was 100 percent accurate in all the other detailed information" that Hodge "never stopped dealing drugs" between 1996 and 1999. *Id.* at 433. This evidence, taken together, constituted a strong showing of regularity.[4] *Cf. United States v. Uwaeme*, 975 F.2d

---

[3]We note that this level of similarity would not be sufficient, by itself, to support a relevant conduct finding. *Cf. United States v. Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 1994) ("We do not think that two offenses constitute a single course of conduct simply because they both involve drug distribution."); *United States v. Crockett*, 82 F.3d 722, 730 (7th Cir. 1996) ("The mere fact that the defendant has engaged in other drug transactions is not sufficient to justify treating those transactions as 'relevant conduct' for sentencing purposes.").

[4]In contending that the court erred in counting the 1996 sales as relevant conduct, Hodge relies on *United States v. Hill*, 79 F.3d 1477 (6th Cir. 1996), in which the Sixth Circuit held that a district court erred in including as relevant conduct a drug transaction that preceded the offense of conviction by 19 months. *See Hill*, 79 F.3d at 1485. *Hill* is of little rel-

1016, 1019 (4th Cir. 1992) (explaining that at sentencing district court may consider reliable hearsay in determining drug quantity). *But see United States v. Hahn*, 960 F.2d 903, 911 (9th Cir. 1992) (stating without explanation that "[w]hen regularity is to provide most of the foundation for temporally remote, relevant conduct, *specific repeated events* outside the offense of conviction must be identified").

In our view, the Government's strong showing of regularity compensated for the significant temporal gap between the 1996 uncharged conduct and the 1999 offense of conviction, as well as for the absence of a strong showing of similarity. *See* U.S.S.G. § 1B1.3, comment. (n.9(B)) ("[W]here the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity."). The evidence here established that both the 1996 sales and the 1999 offense were part of a pattern of narcotics trafficking that never stopped between the uncharged conduct and Hodge's commission of the 1999 offense. Thus, the district court did not clearly err in counting the 1996 sales as relevant conduct. *See United States v. Anderson*, 243 F.3d 478, 485 (8th Cir. 2001) (affirming a finding that cocaine-related transactions predating the charged conspiracy were relevant conduct because the defendant was a career narcotics trafficker); *United States v. Geralds*, 158 F.3d 977, 979 (8th Cir. 1998) (affirming finding that defendant's possession of a quantity of cocaine base was relevant conduct with respect to a powder cocaine distribution offense that he committed 18 months later because both offenses related to distribution of similar quantities of forms of

---

evance here, however, because there "the government did not introduce evidence at the sentencing hearing to support a finding that [the defendant] sold crack regularly, and the district court made no such finding." *Id.* at 1480-81. Because of these factors, the panel refused to "presume that [the defendant] made his living as a crack dealer during his period of unemployment" and, thus, the panel "analyze[d] the relevant conduct issue as two instances [of drug activity], approximately nineteen months apart." *Id.* at 1481. Here, on the other hand, Detective Collins testified that his informant had told him that Hodge continuously distributed narcotics and had no legitimate job, and the district court therefore properly analyzed Hodge's conduct not as isolated conduct but as events in a regular pattern of narcotics trafficking.

cocaine, both involved defendant's travel to St. Louis to acquire the cocaine and return to southeast Missouri to distribute it, and both were part of a regular pattern of drug distribution); *United States v. Richards*, 27 F.3d 465, 468-69 (10th Cir. 1994) (affirming finding that weekly heroin sales over four-month period were relevant conduct with respect to heroin trafficking offense occurring 17 months later despite lack of evidence of the details of the prior sales); *United States v. Roederer*, 11 F.3d 973, 978-80 (10th Cir. 1993) (affirming finding that 1980-87 cocaine conspiracy was relevant conduct with respect to 1992 cocaine distribution when defendant had continued to distribute cocaine over the entire period); *United States v. Burnett*, 968 F.2d 278, 280-81 (2d Cir. 1992) (affirming finding that defendant's purchases of a total of three kilograms of cocaine were relevant conduct with respect to purchase of over 22 pounds of marijuana from different source several months later); *United States v. Perdomo*, 927 F.2d 111, 114-15 (2d Cir. 1991) (affirming finding that the defendant's participation in a cocaine transaction was relevant conduct with respect to conspiracy to distribute cocaine several months later despite differences in the defendant's role in the transactions, the quantities of cocaine, and the people with whom he was dealing, because the "defendant's continued involvement in the specified type of criminal activity—cocaine trafficking—remains evident").

V.

For the foregoing reasons, we affirm Hodge's convictions and sentence.

*AFFIRMED*