**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-4099**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

GREGORY CUSTIS, a/k/a Peanut,

Defendant - Appellee.

---

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Andre M. Davis, District Judge.  (CR-04-
149-AMD)

---

Argued:  September 22, 2005          Decided:  October 19, 2005

---

Before NIEMEYER, Circuit Judge, HAMILTON, Senior Circuit Judge, and
Robert J. CONRAD, Jr., United States District Judge for the Western
District of North Carolina, sitting by designation.

---

Vacated and remanded by unpublished per curiam opinion.

---

**ARGUED:** Steven Hale Levin, Assistant United States Attorney, OFFICE
OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant.
Alan Royce Lee Bussard, Towson, Maryland, for Appellee.  **ON BRIEF:**
Allen F. Loucks, United States Attorney, Jason M. Weinstein,
Assistant United States Attorney, Baltimore, Maryland, for
Appellant.

---

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

In this criminal appeal, the government seeks relief from the district court's order granting the defendant's motion to suppress evidence seized from the defendant's residence pursuant to a search warrant. Concluding the district court erred in determining that the search warrant was not supported by probable cause, we vacate and remand for further proceedings.

I.

On June 17, 2003, members of the Baltimore County Police Narcotics Division executed a search warrant at 44 Flaxton Court, Baltimore, Maryland. As described in the affidavit submitted in support of the application for the search warrant at issue (the Supporting Affidavit), during the first week of June 2003, Detective Brian High (Detective High) of the Baltimore City Police Department spoke with a confidential informant. The Supporting Affidavit, sworn to by Detective High, identified the confidential informant as NWD# 497 and stated that "NWD# 497 has proven to give very reliable information in the past, which has led to numerous [s]eizures of drugs, money and the arrests of those responsible." (J.A. 16).

NWD# 497 (the CI) told Detective High that the defendant, Gregory Custis, also known as "Peanut" (Custis), sells heroin and cocaine through street dealers located at the 2700 block of West

Coldspring Lane, Baltimore, Maryland and the nearby 4400 block of Park Heights Avenue, Baltimore, Maryland.  According to the CI, the street name for Custis' heroin product was "Murder Inc." and such product had been sold in this area, on a daily basis, for over a year.  The CI reported that Custis sells the heroin for $10.00 per unit and the cocaine for $5.00 per unit.

The CI further advised Detective High that Custis transported the heroin and cocaine as needed to his street dealers on site in a red and white Ford Bronco from 8:00 a.m. until 6:00 p.m.  The CI provided the license plate number for the Ford Bronco and further stated that Custis kept the drugs in his vehicle throughout the day for resupply purposes.

The CI advised Detective High that several males worked for Custis as the street dealers at the above described locations. Specifically, the CI described a black male known as "Mo," who sold heroin for Custis, and a male by the name of William Horshaw, who sold both heroin and cocaine for Custis.

On June 3, 2003, as a result of learning the aforementioned information, Detective High and fellow Baltimore Police Detective Rager, set up covert surveillance in the 2700 block of West Coldspring Lane and observed what appeared to them to be a street-level drug transaction.  Specifically, the detectives observed the male known as "Mo" standing on the block and being approached by an unknown male.  The unknown male then handed Mo currency in exchange

for a small object which the detectives suspected contained illegal drugs. The unknown male thereafter left the area. "Mo" then handed the currency to another individual, identified as Reginald Lott. The detectives, along with an arrest team, approached and searched Mo and Reginald Lott for illegal drugs, but found none.

The next day, on June 4, 2003, Detectives High and Rager set up surveillance in the 4400 block of Reisterstown Road at 2700 West Coldspring Lane.[1] At that location, they saw William Horshaw retrieve a small object from his shoe as an unknown male approached him. Horshaw and the male walked out of the detectives' view, but reappeared approximately ten seconds later. Both individuals then walked away from each other. The two detectives approached the unknown male and recovered a zip lock bag with a miniature zip lock bag containing a rock powder substance, which the detectives suspected was heroin. The detectives "then approached Mr. Horshaw and seized a tops tobacco pouch containing a piece of news paper containing 5 black top vials with rock substance, suspected heroin, from his left shoe and a piece of plastic containing 9 green top vials with rock substance, suspected cocaine, from his right shoe and 7 small zip locks with a miniature zip lock with rock powder substance, suspected heroin, from his right watch pocket in his pants." (J.A. 17).

---

[1]The 4400 block of Park Heights Avenue and the 4400 block of Reisterstown Road run parallel to each other, and are one block apart at the 2700 block of West Coldspring Lane.

- 4 -

Detective High subsequently ran a license plate check on the license plate number that the CI had given him for Custis' Ford Bronco (Maryland license plate number M987078). The check confirmed that the number corresponded to a Ford truck registered to Custis. Notably, the check also revealed that the same license plate had been suspended effective April 25, 2003.

Detective High learned via a records check with the Baltimore Gas & Electric Company that as of February 25, 2003, Custis received utility service from the company at 44 Flaxton Court in Baltimore, Maryland.[2] Thereafter, Detective High drove to 44 Flaxton Court and observed the red and white Ford Bronco with Maryland license plate number M987078 parked in front of 44 Flaxton Court.

The balance of the Supporting Affidavit stated as follows:

> Your Affiant know[s] that Gregory Custis Jr. is married to Roxanne Custis. On 6 June 2003 at approximately 3:35 P.M. Your Affi[an]ts went to 44 Flaxton Court in attempts to locate the Ford Bronco that is driven by Gregory Custis. At this time we observed a female getting out of a Burgundy station wagon in front of 44 Flaxton Court. The station wagon had a Maryland tag LDY-149 and the same was [run] through MVA and found to be listed to Roxanne Custis DOB 7/4/68.
>
> Your Affiant have also had experience[] in the past that drug dealers keep a large quantity of drugs and money in their permanent residence for security from others. We have also found that drug dealers transport

---

[2]Custis' residence at 44 Flaxton Court is approximately seven miles away from the locations where Detectives High and Rager set up surveillance based upon the CI's information.

- 5 -

> drugs to a given area for street sales away from their residence.
>
> Based on the information given by NWD# 497 we have reason to believe that Gregory Custis Jr. is transporting Heroin and Cocaine in his 1989 Ford Bronco Maryland tag M987078 to the 2700 block W. Coldspring Lane for street sales in this area. We also have reason to believe that Gregory Custis Jr. is packaging and sorting heroin and Cocaine at 44 Flaxton Court, which is his residence.

(J.A. 18).

Detective High and co-affiant Detective John Burns (also of the Baltimore City Police Department) applied for a search warrant for 44 Flaxton Court and Custis' red Ford Bronco on June 13, 2003. In addition to submitting the Supporting Affidavit as part of the search warrant application, Detectives High and Burns each submitted sworn statements describing their respective substantial training and experience in illegal drug interdiction.

On June 13, 2003, Judge Yvonne Holt-Stone, a judge for the District Court of Maryland, Baltimore City (the Maryland Judge) issued a search warrant for Custis' residence and his Ford Bronco. Members of the Baltimore County Police Narcotics Division executed the warrant on June 17, 2003, leading to the seizure of three firearms, ammunition, illegal drugs, drug paraphernalia, and other assorted papers from Custis' residence.

On March 17, 2004, a federal grand jury sitting in the District of Maryland indicted Custis in a five-count indictment charging him with various federal drug and firearm offenses. See 18 U.S.C. § 2; 18 U.S.C. § 924(c); 21 U.S.C. §§ 841(a)(1),

(b)(1)(B); 21 U.S.C. § 846. Custis filed a motion to suppress the items seized from his residence on June 17, 2003 and any derivative evidence.

The district court granted Custis' suppression motion in open court on December 20, 2004. In so granting, the district court found probable cause lacking in support of the search warrant for his residence. Additionally, the district court held that Leon's good faith exception to the exclusionary rule did not operate to save the search. See United States v. Leon, 468 U.S. 897 (1984). The government noted this timely appeal in challenge of the district court's grant of Custis' suppression motion.

II.

The Fourth Amendment protects against unreasonable searches and seizures, and mandates that: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). And although the Supreme Court has noted that probable cause is not susceptible to precise definition, the Court has expressly described probable cause as "existing where the known

facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996). Under this totality-of-the-circumstances approach, a judicial officer presented with a search warrant application must determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place" based on "the veracity and basis of knowledge of persons supplying hearsay information." Gates, 462 U.S. at 238 (internal quotation marks omitted).

A court sitting in review of a probable cause finding may ask only whether the issuing judicial officer had a "'substantial basis . . . for conclud[ing]' that probable cause existed." Id. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). Below, the district court determined that a substantial basis for probable cause was lacking, a legal determination we review de novo. See United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996).

Appellate briefing and oral argument in this case have narrowed the probable cause issue before us down to whether the Supporting Affidavit adequately linked Custis and his residence to the street-level drug dealing activity described in the Supporting Affidavit such that the Maryland Judge had a substantial basis for concluding that probable cause existed that "cocaine, heroin,

controlled dangerous substances, paraphernalia, weapons, related objects, records, U.S. currency and personal papers showing occupancy and proprietary interest" would be found at Custis' residence. (J.A. 11). In answering this question, we are entitled to consider only the information presented under oath to the Maryland Judge, Wilhelm, 80 F.3d at 118, and must interpret such information in a commonsense, rather than a hypertechnical manner, Gates, 462 U.S. at 236.

We begin our analysis of the probable cause issue before us by recognizing that several statements in the Supporting Affidavit, without any doubt, directly link Custis and his residence to the street-level drug dealing activity described in the Supporting Affidavit. First, the CI identified Custis as the drug dealer who operates and has operated for over a year on a daily basis the street-level, drug-sale operations at the 2700 block of West Coldspring Lane and the 4400 block of Park Heights Avenue, Baltimore, Maryland. Second, the CI expressly reported that Custis used his red and white Ford Bronco with Maryland license plate M987078 to transport the drugs necessary to initially supply these operations for business beginning at 8:00 a.m. Third, the CI expressly reported that Custis used the same vehicle to resupply the same operations throughout the day.

Notably, and we believe wisely, Custis does not dispute that these statements, if sufficiently credible to be reasonably relied

upon by a judicial officer in issuing a search warrant, serve to link Custis and his residence to the nearby drug dealing activity described in the Supporting Affidavit, such that probable cause existed to believe that the evidence of criminal activity sought would be found at Custis' residence. Accordingly, the discrete attack that Custis makes upon the sufficiency of the Supporting Affidavit to provide probable cause heavily focuses upon the reliability of the CI.

We hold without hesitation that the Supporting Affidavit contained sufficient indicia of the CI's reliability such that the Maryland Judge was objectively reasonable in relying upon the statements of the CI as reported by Detective High. The CI was known to Detective High, and thus, Detective High could personally assess the CI's credibility. Moreover, the fact that the CI was known to Detective High supplies an important indicia of reliability because, unlike an anonymous tipster, the CI had a significant interest in being truthful given that if he was untruthful, he risked criminal prosecution for giving a false police report. United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000); United States v. Riley, 351 F.3d 1265, 1268 (D.C. Cir. 1993). That history had proven the CI to have previously given reliable information to law enforcement which led to numerous seizures of drugs, money, and the arrests of those responsible supplies yet another important indicia of reliability. United

States v. Hodge, 354 F.3d 305, 311 (4th Cir. 2004) ("a proven, reliable informant is entitled to far more credence than an unknown, anonymous tipster . . . .") (internal quotation marks omitted)); United States v. Jackson, 818 F.2d 345, 348 (5th Cir. 1987) (reliability of an informant may be established by showing that informant has previously given tips proven to be correct).

Finally, that Detectives High and Rager were able to corroborate a substantial amount of the information supplied by the CI provides strong indicia of the CI's reliability. Hodge, 354 F.3d at 309 (informant's reliability may be bolstered by degree to which informant's story is corroborated). Specifically, Detectives High and Rager checked out the two street-level dealers identified by the CI and found them at the locations described by the CI. At one location the detectives observed a suspected drug transaction and at the other location they observed what they were able to verify as a drug transaction. Detective High corroborated that a Ford Bronco with Maryland license plate M987078 was registered to Custis. After learning that the local utility company listed Custis' address as 44 Flaxton Court, Detective High observed a red and white Ford Bronco with Maryland license plate M987078 parked in front of the address.

Despite the substantial corroboration of the detailed information supplied by the CI regarding Custis' drug dealing modus operandi, Custis argues that the Maryland Judge was objectively

unreasonable in relying upon any portion of the information supplied by the CI because no law enforcement officer ever corroborated the CI's statement that he delivered drugs to Mo and William Horshaw in the area of the 2700 block of West Coldspring Lane and the 4400 block of Park Heights Avenue.

Custis' argument misses the mark. As we have previously quoted from the Fifth Circuit's en banc decision in United States v. Blount, 123 F.3d 831, 836 (5th Cir. 1997), "'[t]here is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible. Whether subsequent corroboration is necessary must be determined in the light of the totality of the circumstances presented by the particular set of facts.'" United States v. DeQuasie, 373 F.3d 509, 519 (4th Cir. 2004) (quoting Blount, 123 F.3d at 836). Here, Detectives High and Rager corroborated without discrepancy a substantial amount of the extremely detailed information regarding criminal activity supplied by the CI, including personally witnessing a verified drug deal and a suspected drug deal at the very locations and involving the very persons identified by the CI. Given that the CI was known to Detective High; the CI put himself at risk of prosecution for giving false information to a police officer by supplying the information he did about Custis; the CI had a past history of giving reliable information to law enforcement regarding drug dealing in the area; and Detective High

had located Custis' residence approximately seven miles from the street-dealing locations at issue, the Maryland Judge was objectively reasonable in relying upon/crediting the information supplied by the CI in the absence of corroboration of the CI's tip that Custis physically delivered/supplied drugs to the two locations at issue.

Custis also takes issue with the credibility of Detectives High and Burns. He does so on the sole basis that the preprinted form these detectives submitted in applying for the search warrant erroneously stated that his residence was located in the City of Baltimore, when in fact, his residence was outside the city limits in Baltimore County. According to Custis, this misstatement made the Maryland Judge's reliance upon the statements of Detectives High and Burns in the Supporting Affidavit objectively unreasonable.[3]

While we urge law enforcement officers to take extreme care in preparing their search warrant applications to ensure the accuracy of all information contained therein, we do not believe that the single misstatement at issue here rendered the Maryland Judge's reliance on the sworn statements of Detectives High and Burns to be objectively unreasonable. The information was not material.

---

[3]We note that the parties agree that the Maryland Judge here had the authority under Maryland law to issue the search warrant for Custis' residence despite the residence's location outside Baltimore City limits. Moreover, Custis does not argue that the misstatement itself invalidates the search warrant.

Indeed, as the record shows, the detectives had nothing to gain by portraying Custis' residence as being located within Baltimore City limits as opposed to simply being located within Baltimore County but outside the city limits.

In conclusion, we hold the district court erred in granting Custis' motion to suppress the evidence found and seized during the execution of the search warrant at his residence at 44 Flaxton Court.  Reading the Supporting Affidavit in a commonsense, rather than a hypertechnical manner, as we are required to do, Gates, 462 U.S. at 236, we are convinced that the Maryland Judge had a substantial basis for concluding that probable cause existed to believe that the evidence of criminal activity identified in the warrant application would be found at 44 Flaxton Court. Accordingly, we vacate the district court's order granting Custis' suppression motion and remand for further proceedings.[4]

VACATED AND REMANDED

---

[4]Because we vacate and remand this case to the district court on the basis that the search warrant for Custis' residence was supported by probable cause, we need not reach the issue of whether the district court erred in holding that Leon's good faith exception to the exclusionary rule did not operate to save the search.