**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-4581**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BARRY WAYNE GRIGGS,

Defendant - Appellant.

———————

Appeal from the United States District Court for the District of
South Carolina, at Florence.   Terry L. Wooten, District Judge.
(CR-04-151)

———————

Submitted: April 18, 2007            Decided:  July 30, 2007

———————

Before WILKINSON, MOTZ, and KING, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

D. Craig Brown, Florence, South Carolina, for Appellant.  Reginald
I. Lloyd, United States Attorney, A. Bradley Parham, Assistant
United States Attorney, Thomas E. Booth, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Barry Wayne Griggs appeals from his jury conviction and sentence on charges of possession of a firearm (a Marlin Model 60 .22 caliber rifle) and ammunition (Remington Brand .22 caliber ammunition) by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(e) (2000) (Count 1), and knowingly receiving a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(n), 924(a)(1) (2000) (Count 2). Following Griggs' conviction, the probation officer prepared a presentence investigation report ("PSR"), assigning Griggs a base offense level of twenty, pursuant to U.S. Sentencing Guidelines Manual ("USSG") § 2K2.1(a)(4)(A) (2003), and an adjusted offense level of thirty, after application of a six-level increase based on the offense involving twenty-five to ninety-nine firearms (relevant conduct), pursuant to USSG § 2K2.1(b)(1)(C), a two-level increase for an offense involving a destructive device, pursuant to USSG § 2K2.1(b)(3), and an additional two-level increase for a firearm that was stolen or had an altered or obliterated serial number, pursuant to USSG § 2K2.1(b)(4).[1]  Combined with Griggs' criminal

_____

[1]The enhancements were based on testimony and evidence of over seventy firearms seized from Griggs' North Carolina residence approximately four months prior to Griggs' arrest in South Carolina.  As a result of those firearms being found in his residence, Griggs was indicted on a multi-count indictment in the Western District of North Carolina and charged with being a felon in possession of firearms. At the time of Griggs' trial, the North Carolina charges were still pending;  they were subsequently dismissed on September 29, 2005.  The district court in the present

history category of II, the total offense level of thirty corresponded to a guidelines sentencing range of 108 to 135 months' imprisonment. See USSG Ch. 5, Pt. A, table. The statutory maximum sentence applicable to Count 1 is ten years, and the statutory maximum on Count 2 is five years. 18 U.S.C. §§ 922(g)(1), 924(a)(2), and § 922(n), respectively. Accordingly, the applicable advisory guideline range was 108 to 120 months' imprisonment. (Id.).

Following the taking of evidence[2] and consideration of arguments at sentencing, the district court determined that the firearms found at Griggs' home were properly deemed to be relevant conduct, and allowed the ten-level enhancement of Griggs' base offense level. Specifically, the district court held that USSG § 1B1.3(a)(2) applied, the evidence was reliable, and Griggs' possession of the uncharged firearms was part of a "common scheme or plan to possess firearms or . . . was the same course of conduct." The district court sentenced Griggs to a term of imprisonment of 115 months as to Count 1 and sixty months as to Count 2, to run concurrently with one another, and to three years

case denied Griggs' motion in limine and allowed introduction, pursuant to Fed. R. Crim. P. 404(b), of evidence of the discovery of the firearms seized in North Carolina.

[2]At sentencing, Alcohol, Tobacco, and Firearms ("ATF") Agent Yvonne Becker testified that agents seized more than seventy firearms, including a stolen .22 Colt pistol and a destructive device during the November 2002 search of Griggs' North Carolina residence.

of supervised release as to each count, also to run concurrently. On appeal, Griggs challenges the district court's admission of the evidence regarding the additional firearms found in his home four months prior to the instant arrest, and the enhancement of his sentence based on those additional firearms.  We affirm.

The evidence presented at the trial of this matter demonstrated that Griggs, who was out on bail at the relevant time, and his mother went to Wal-Mart in Cheraw, South Carolina on or about March 19, 2003, to purchase a .22 caliber Marlin rifle.  The assistant manager, Patrick Pierre, testified that an associate told him there was an "inquiry of a firearm that [a female customer] wants to purchase."  Pierre testified that Griggs was "standing around just watching [his mother]," and then he discussed with Pierre a .22 caliber Rossi rifle.  When it was determined that the Rossi was unavailable, Griggs decided on the Marlin.  The associate gave Griggs' mother the paperwork to complete for the firearm purchase.  Pierre attested that Griggs purchased ammunition for the firearm, and was holding it when he left Wal-Mart.  According to Pierre, Griggs' mother purchased the firearm, and Griggs only pointed it out, but never touched it in Pierre's presence. Following the purchase of the firearm, Pierre carried the firearm out of the store and handed it to Griggs' mother.

Stephanie David, the Wal-Mart associate, testified that Griggs came into Wal-Mart with his mother and that it was Griggs

- 4 -

who inquired about the .22 caliber Rossi rifle. When Griggs was advised that this weapon was unavailable, he inquired about ordering it, and then eventually "pointed out the [rifle] he wanted." David testified that Mrs. Griggs asked no questions about any guns, and that Griggs asked all the questions. She attested further that Griggs' mother completed the paperwork, and that Griggs attempted to assist her, but was told that he could not do so. David also testified that Griggs purchased ammunition, that he paid for it in cash, and that she handed Griggs the ammunition after the purchase.

Following testimony from an ATF agent concerning the interstate nexus issue, the Government called Mrs. Griggs as a witness, apparently expecting her to testify that she was a "straw purchaser" of the firearm for her son. Instead, she testified that she purchased the Marlin .22 caliber rifle to protect herself, that it was the first gun she had ever bought, and that her son was there merely to assist her. She further attested that while Griggs "could have" given her "a dollar or two" to buy the gun, she paid for it with most of her own money. Mrs. Griggs testified that Griggs never possessed the firearm.

ATF Agent Becker testified regarding the firearms found in Griggs' home on November 5, 2002. Prior to her testimony, the court instructed the jury as to the applicability of Fed. R. Evid. 404(b) relative to the upcoming evidence. Agent Becker testified

that more than seventy firearms were found in, and seized from, Griggs' North Carolina home, including an explosive device found in a safe. She attested to a log book found at the home that listed the serial numbers, makes, models, and other characteristics of many of the firearms that were seized.[3]

The Government introduced testimony from Officer R.A. Davis, Jr., of the North Carolina Wildlife Department, who testified about Griggs' alleged involvement in, and arrest for, the crime of night hunting on November 2, 2002. He attested that when he arrested Griggs, he saw a firearm in the back seat of a locked truck that Griggs allegedly was operating. Officer Davis testified that during execution of a search warrant relative to the firearm, seventy-three firearms were found in Griggs' home, including multiple .22 caliber rifles. Officer Davis also testified that he tape-recorded a statement from Griggs during the execution of the search of Griggs' home in which Griggs claimed ownership of the

---

[3]According to the PSR, when Agent Becker interviewed Mrs. Griggs on January 23, 2004, and asked Mrs. Griggs if she recalled purchasing a Marlin .22 caliber rifle for her son at Wal-Mart on March 19, 2003, Mrs. Griggs immediately replied, "oh, the one for Barry." In addition, the PSR reflects that Agent Becker and Detectives Walker and Tice were advised by Mrs. Griggs on the same date that her son came to her residence and asked her to buy a gun for him, that he told her what she needed to do to make the purchase, and that he gave her most of the money to purchase the weapon. She also told the officers that Griggs kept the firearm in his possession after it was purchased, and stated that she was afraid of guns and had no use for them, so "why should I keep it?" Only portions of the trial testimony are included in the joint appendix, and neither party referred to this testimony in their brief.

firearms. The district court allowed into evidence a transcript of the tape-recording pursuant to Fed. R. Evid. 404(b), and gave a limiting instruction to the jury on the admissibility of evidence under Rule 404(b).

Following testimony by two witnesses called by Griggs that the firearms seized at Griggs' house belonged to them, Officer Davis testified that Griggs told him he was a gun collector and admitted to the officer that the firearms belonged to Griggs. The district judge gave another instruction to the jury stating the law with regard to Rule 404(b) evidence.

At the conclusion of the evidence, a specific charge regarding the evidence previously admitted pursuant to Rule 404(b) was given to the jury by the district court. The jury returned a verdict of guilty on both counts.

On appeal, Griggs specifically asserts that the district court erred in admitting, over his objection, the evidence of the additional firearms discovered during the search of his home four months prior to the arrest in the instant case, as well as the night hunting incident of November 2, 2002. He claims the evidence was not relevant, unduly prejudicial, confused the issues, and misled the jury as to the charges on which Griggs was being tried. We review the district court's admission of evidence for abuse of discretion. See United States v. Hodge, 354 F.3d 305, 312 (4th Cir. 2004) (standard of review). Although inadmissible solely to

prove the character of a defendant, evidence of other crimes, wrongs, or acts "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Such evidence is admissible if it is necessary, reliable, and relevant to an issue other than the defendant's character. United States v. Queen, 132 F.3d 991, 995 (4th Cir. 1997). If the prior act evidence meets these criteria and its probative value is not substantially outweighed by its prejudicial effect, it may be admitted. Id.

A review of the record leads us to the conclusion that the evidence of Griggs' prior illegal firearms possession was admissible under Rule 404(b), and was not unfairly prejudicial. The similarity of the conduct alleged and the closeness in time of the offenses tends to demonstrate Griggs' knowledge and intent, as well as an absence of mistake or accident, which are permissible purposes for admission of evidence under Rule 404(b). See, e.g., United States v. Teague, 737 F.2d 378, 381 (4th Cir. 1984). Here, Griggs' defense was one of "innocent presence," that is, that the firearm and ammunition were for his mother and he was present merely to assist her. The evidence of Griggs' illegal possession of other firearms went directly to the issue of Griggs' intent to possess illegally the Marlin .22 caliber rifle and ammunition on this occasion, as well as the inference that he was the actual

buyer and knowingly possessed the charged firearm and ammunition. In addition, the evidence was necessary to rebut the damaging and unexpected testimony from Mrs. Griggs that she purchased the firearm for herself, and to establish a pattern of behavior by Griggs of possessing illegal firearms and ammunition. Nor was the evidence unduly prejudicial——it was not lurid or inflammatory, nor did it tend to cause the jury to decide the case against Griggs on an irrational basis. See United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996). Moreover, the district court minimized the risk of unfair prejudice by explaining repeatedly the proper uses of other crimes evidence at the time the evidence was introduced, as well as in the jury charge prior to deliberation.[4] Hodge, 354 F.3d at 312; see United States v. Alerre, 430 F.3d 681, 692 (4th Cir. 2005) ("Ordinarily, of course, we presume that a properly instructed jury has acted in a manner consistent with the instructions."). Given these facts, we find that the district court did not abuse its discretion in allowing the evidence pursuant to Rule 404(b).

Griggs' second issue on appeal is that the district court erred in enhancing his sentence ten levels based on the additional seventy-three firearms and the destructive device found in the search of his home in North Carolina. Griggs argues that

---

[4]Griggs indicated his satisfaction with the limiting instructions provided by the district court at trial.

the district court's relevant conduct determination was erroneous because his possession of the weapons found in his home was not part of the same scheme or plan as the offense of conviction, and was not charged in the indictment. He contends that such extraneous offense conduct should not be used to enhance his felon-in-possession case because the conduct was too remote in time (four months earlier) and place (North Carolina versus South Carolina) from the offense of conviction to warrant the increase in his offense level. He asserts his sentence was erroneously enhanced for conduct that did not occur during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. Griggs does not claim that he did not possess the firearms and the destructive device, or deny that one of the firearms was stolen.

We review a district court's application of the sentencing guidelines de novo, and its findings of fact for clear error. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). We review a district court's "relevant conduct" finding under USSG § 1B1.3(a)(2) for clear error. Hodge, 354 F.3d at 313. At sentencing, a district court properly may consider offenses for which the defendant has neither been charged nor convicted, provided they constitute "relevant conduct." United States v. Bowman, 926 F.2d 380, 381-82 (4th Cir. 1991).

Relevant conduct includes offenses that are part of the same course of conduct or common scheme or plan as the offense of conviction. United States v. McAllister, 272 F.3d 228, 233-34 (4th Cir. 2001); see USSG § 1B1.3(a)(2). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." USSG § 1B1.3, comment. n.9(A). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." Id., comment. n.9(B). The determining factors are "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." Id.

A defendant's repeated possession of uncharged firearms during a brief period of time supports a "relevant conduct" enhancement.[5]  Here, Griggs possessed not only the .22 caliber

---

[5] See, e.g., United States v. Brummett, 355 F.3d 343, 345 (5th Cir. 2003) (possession of four firearms on three separate occasions within a nine-month period); United States v. Santoro, 159 F.3d 318, 321 (7th Cir. 1998) (possession of uncharged assault rifle along with two other weapons within a six to nine-month period); United States v. Windle, 74 F.3d 997, 1000-01 (10th Cir. 1996) (possession of illegal firearms over four to five-month period sufficient to constitute "same course of conduct"); United States v. Powell, 50 F.3d 94, 104 (1st Cir. 1995) ("nearly

Marlin rifle and ammunition after a felony conviction, but also possessed more than seventy other firearms within only four months. We find that Griggs' pattern of behavior of possessing firearms was similar and regular, and the four-month time period between the offenses permits a reasonable conclusion that the firearms possessions were part of an ongoing series of offenses. Accordingly, we find no error in the district court's determination that the firearms recovered from Griggs' home constituted relevant conduct in relation to Griggs' offense of conviction.[6]

Accordingly, we affirm Griggs' conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

contemporaneous[] possession of uncharged firearms is . . . relevant conduct in the context of a felon-in-possession prosecution").

[6]Griggs' assertion that USSG § 1B1.3(a)(2) does not apply because his offenses could have been grouped under § 3D1.2(a)-(c) and USSG § 3D1.3 instead of USSG § 3D1.2(d) is of no moment, as USSG § 1B1.3(a)(2) specifically requires consideration of the grouping rule in USSG § 3D1.2(d). Moreover, Griggs' challenge to the evidence supporting the enhancements as unreliable because the underlying federal charges were dismissed before trial is without merit because the evidence here (i.e., Agent Becker's testimony at trial and at sentencing establishing that Griggs possessed uncharged firearms and ammunition) met the preponderance of the evidence standard, and the fact that the charges were dismissed do not form the basis for a meritorious challenge. See United States v. Jones, 31 F.3d 1304, 1313, 1316 (4th Cir. 1994); see also USSG § 1B1.3.