**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-4555**

───────────

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

JESUS PINEDA,

          Defendant - Appellant.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Terrence W. Boyle, District Judge. (7:12-cr-00066-BO-1)

───────────

Argued: September 16, 2014        Decided: October 29, 2014

───────────

Before NIEMEYER, WYNN, and FLOYD, Circuit Judges.

───────────

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wynn and Judge Floyd joined.

───────────

**ARGUED:** Terry F. Rose, Smithfield, North Carolina, for Appellant. Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Yvonne V. Watford-McKinney, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

───────────

NIEMEYER, Circuit Judge:

Jesus Pineda was convicted on separate counts of distributing cocaine on January 25, 2012, in violation of 21 U.S.C. § 841(a)(1); distributing cocaine on February 8, 2012, again in violation of § 841(a)(1); possessing a firearm in furtherance of the January 25 drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and possessing a sawed-off shotgun on January 25, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.  The district court sentenced Pineda to 132 months' imprisonment, and Pineda filed this appeal.

On appeal, Pineda challenges the sufficiency of the evidence to convict him of possessing a firearm in furtherance of a drug-trafficking crime.  He also challenges the district court's application of several sentencing enhancements including, mainly, enhancements based on its determination that an uncharged transaction that took place on November 30, 2011, constituted relevant conduct under U.S. Sentencing Guidelines Manual § 1B1.3(a).  For the reasons that follow, we affirm.

I

Based on a drug and firearm transaction that took place on November 30, 2011, in Duplin County, North Carolina, ATF agents began an investigation of Pineda that ultimately led to his convictions in this case.  During the November 30 transaction, a

2

confidential informant ("CI") purchased from Raul Sanchez a stolen assault rifle and one ounce of cocaine, both of which Sanchez had obtained earlier that day from Pineda. Pineda also accompanied Sanchez to the transaction with the CI. On a later date, Pineda approached the CI on his own to indicate that he wanted to cut Sanchez out and to sell drugs directly to the CI. The CI reported the conversation to the ATF case agent who was supervising him, and the agent directed the CI to accept the proposal and to engage in further transactions directly with Pineda.

On January 25, 2012, the CI, while under police surveillance, bought 54.31 grams of cocaine and a 12-gauge sawed-off shotgun from Pineda for $2,550. The two men had previously agreed that Pineda would also sell the CI a .380 caliber handgun. Pineda brought the handgun to the transaction and had it on his person, but when the CI asked Pineda about it, Pineda refused to sell it, indicating that it was "the only piece I've got." He nonetheless promised to sell the handgun to the CI once he had obtained another gun.

Two weeks later, on February 8, 2012, the CI, while again under police surveillance, purchased 54.60 grams of cocaine from Pineda, as well as the .380 caliber handgun. The two men ended the transaction by agreeing that they would arrange another deal once Pineda received a new supply of cocaine. And, a few days

3

later, Pineda texted the CI a picture of another handgun, and the two discussed the sale of that weapon as well.

Pineda was indicted and convicted by a jury on two counts charging him with the distribution of cocaine on January 25 and February 8, on one count charging him with possession of a firearm in furtherance of the January 25 drug transaction, and on one count charging him with possession of a sawed-off shotgun.

Prior to sentencing, the probation officer prepared a presentence report, in which she included, as relevant conduct, the November 30, 2011 transaction. In doing so, the probation officer relied on a statement that Raul Sanchez gave to law enforcement officers regarding the transaction. The presentence report accordingly recommended including in the drug quantity calculation the drug weight that was involved in the November 30 transaction and holding Pineda responsible for the stolen assault rifle that was also involved in that transaction, resulting in enhancements for committing crimes involving three firearms and for possessing a stolen firearm. The presentence report also recommended an enhancement for engaging in the trafficking of firearms. Application of the three enhancements increased Pineda's offense level for sentencing from 18 to 26. Pineda objected to the enhancements, but the district court overruled his objections.

4

Combining Pineda's offense level of 26 with his criminal history category of I resulted in a Guidelines range of 63 to 78 months' imprisonment, plus a consecutive term of 60 months' imprisonment for possession of a firearm in furtherance of a drug-trafficking offense, as required by 18 U.S.C. § 924(c)(1)(A)(i). The court sentenced Pineda to a term of 72 months' imprisonment for his drug convictions and his sawed-off shotgun conviction and a consecutive term of 60 months' imprisonment for his § 924(c) conviction, for a total of 132 months' imprisonment.

This appeal followed.

II

Pineda contends first that the evidence was insufficient to support his conviction for possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). While he acknowledges that the evidence was sufficient to prove that he possessed a firearm during his sale of cocaine to the CI on January 25, 2012, he argues that the evidence was insufficient to show that his possession was "in furtherance of" the drug transaction.

We will reject a sufficiency-of-the-evidence challenge if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States

v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (quoting United States v. Myers, 280 F.3d 407, 415 (4th Cir. 2002)) (internal quotation marks omitted).

"[Section] 924(c) requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime." Lomax, 293 F.3d at 705. And there are "numerous ways" that a firearm can function in those roles:

> For example, a gun [can] provide a defense against someone trying to steal drugs or drug profits, or it might lessen the chance that a robbery would even be attempted. Additionally, a gun might enable a drug trafficker to ensure that he collects during a drug deal. And a gun [can] serve as protection in the event that a deal turns sour. Or it might prevent a transaction from turning sour in the first place.

Id.

The evidence in this case shows that during the drug transaction on January 25, Pineda took out a .380 caliber handgun and placed it underneath his leg while conducting the drug transaction with the CI. When the CI inquired about purchasing the gun, as the two had previously agreed, Pineda refused to sell it, explaining that it was "the only piece" that he owned at the time and that if he sold it, he would not have any way to protect himself. He stated that he would sell the gun to the CI once he had "[gotten] another piece."

6

While merely having a firearm "accessible and ready for use" can suggest that a defendant is using it for protection or to ensure that a deal goes smoothly, United States v. Jenkins, 566 F.3d 160, 164 (4th Cir. 2009), the evidence in this case was much stronger. The jury could undoubtedly have concluded that Pineda considered the firearm to be critical to his drug-trafficking activities, including the drug deal that he was conducting with the CI that day. See United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982) (noting that, in reviewing a challenge to the sufficiency of the evidence, "[w]e must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established"). We therefore conclude that there was substantial evidence to support the jury's finding that Pineda possessed a firearm in furtherance of the January 25, 2012 drug transaction.

III

Pineda next contends that, in sentencing him, the district court erred by treating his alleged participation in the transaction that occurred on November 30, 2011, as "relevant conduct" under U.S.S.G. § 1B1.3(a). Because the court found that transaction to be relevant conduct, it enhanced Pineda's sentence by increasing the amount of drugs for which he was held

7

accountable and by taking into account the stolen assault rifle involved in the deal. Specifically, because of that firearm, Pineda received two enhancements that otherwise would not have applied -- an enhancement of two levels for committing an offense that involved at least three firearms, under U.S.S.G. § 2K2.1(b)(1)(A), and an enhancement of two levels because one of the firearms was stolen, under § 2K2.1(b)(4)(A).

To challenge the court's inclusion of the November 30 transaction as relevant conduct, Pineda makes two separate arguments -- first, an evidentiary challenge that evidence of the transaction came in through the hearsay statement made by Raul Sanchez to law enforcement, a statement that, he contends, did not have sufficient indicia of reliability; and second, a substantive challenge that the November 30 transaction was not factually "part of the same course of conduct" as the transactions that took place on January 25 and February 8.

As to his evidentiary challenge, Pineda argues that Sanchez's statement to law enforcement lacked sufficient reliability:

> Raul Sanchez did not testify at the trial of this matter. Raul Sanchez did not testify at the sentencing hearing. There is no evidence who provided the statement to the Office of Probation. The district court accepted as relevant conduct that someone somewhere gave the Office of Probation a statement that says someone by the name of Raul Sanchez says Mr. Pineda went with him on November 30, 2011 when he, Raul Sanchez, sold an ounce of cocaine

8

and a gun that he, Raul Sanchez, says was stolen. There is no other evidence that the act took place, that the amount of cocaine is the amount Sanchez contends there was or that a firearm was present or that such a firearm was stolen other than this statement.

It is well established that, at sentencing, the district court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). The district court's determination that evidence is sufficiently reliable to be considered at sentencing is reviewed for an abuse of discretion, United States v. Gilliam, 987 F.2d 1009, 1014 (4th Cir. 1993), and its factual findings are reviewed for clear error, United States v. Alvarado Perez, 609 F.3d 609, 612 (4th Cir. 2010).

While the government did not present any witnesses at the sentencing hearing, the district court was able to rely on trial testimony that corroborated significant aspects of Sanchez's statement. Specifically, the ATF case agent testified at trial that when he took over the investigation from one of his colleagues in December 2011, he learned that his predecessor had developed a CI who "had purchased a stolen firearm and an amount of cocaine from a gentleman named Raul Sanchez" and that "Pineda was present during the first transaction" between Sanchez and

9

the CI. The case agent further testified that it was this transaction that led him to begin his investigation into Pineda. Similarly, the CI testified at trial that he had first met Pineda through Sanchez, describing how Sanchez, Pineda, and another individual came to his house because Sanchez was "trying to sell [him] an assault rifle." We conclude that this trial testimony provides ample "indicia of reliability to support [the] probable accuracy" of the statement by Sanchez that is contained in the presentence report, U.S.S.G. § 6A1.3(a), and that the district court did not err when it found that the government had proved, by a preponderance of the evidence, that Pineda had participated in the sale of cocaine and a stolen rifle on November 30, 2011.

Pineda's primary argument, however, is that, even if Sanchez's statement is accepted as true, his conduct on November 30 did not qualify as "relevant conduct" because it was not "part of the same course of conduct or common scheme or plan as the offense of conviction," as required by U.S.S.G. § 1B1.3(a)(2). Pineda argues that the mere fact that the November 30 transaction and the two controlled purchases on January 25 and February 8 all involved the sale of cocaine and firearms "is not enough of a similarity to make the conduct of November 30, 2011 relevant conduct to the offenses" for which he was convicted. Pineda emphasizes that he played a different

10

role in the November 30 transaction than in the controlled purchases and argues that there was no evidence showing that the three transactions were part of a larger pattern of illegal activity. In short, he asserts that what happened on November 30 was an "isolated, unrelated event[] that happen[s] to only be similar in kind."

The application note accompanying the Guideline defining "relevant conduct" explains that "two or more offenses . . . constitute part of a <u>common scheme or plan</u>" if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 cmt. n.9(A) (emphasis added). But even "[o]ffenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the <u>same course of conduct</u> if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." <u>Id.</u> § 1B1.3 cmt. n.9(B) (emphasis added). "Significant factors used to determine whether offenses are part of the same course of conduct 'include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.'" <u>United States v. Hodge</u>, 354 F.3d 305, 313 (4th Cir. 2004) (quoting U.S.S.G. § 1B1.3 cmt. n.9(B)). "When one of the above factors

11

is absent, a stronger presence of at least one of the other factors is required." U.S.S.G. § 1B1.3 cmt. n.9(B).

Where, as here, the defendant "does not contend that the district court applied the incorrect legal rule," but instead challenges "the factual analysis the district court conducted in applying the relevant conduct Guideline," "we review the court's decision for clear error." United States v. McVey, 752 F.3d 606, 610 (4th Cir. 2014).

Applying these principles, we conclude that the district court did not clearly err in finding that Pineda's involvement in the November 30 transaction was sufficiently related to the two controlled purchases to constitute "relevant conduct" for sentencing purposes. In all three transactions, Pineda was the seller of cocaine and a firearm, and therefore the transactions have a relatively high degree of similarity. All of the transactions occurred within two-and-a-half months of each other, therefore indicating that they occurred with a fair degree of regularity. And, most significantly, Pineda's involvement on November 30 led directly to the controlled purchases. As a result of the November 30 transaction -- where Pineda dealt with Sanchez who, in turn, dealt with the CI -- Pineda met the CI, and they later agreed to bypass Sanchez for further deals. In short, the November transaction was the

beginning of a course of conduct that continued -- just without Sanchez as a go-between -- in January and February.

Based on this evidence, we conclude that the three transactions were "sufficiently connected or related to each other as to warrant the conclusion that they [were] part of . . . [an] ongoing series of offenses," U.S.S.G. § 1B1.3 cmt. n.9(B), and therefore that the district court did not err in treating Pineda's participation in the November 30, 2011 transaction as "relevant conduct" at sentencing.

IV

Pineda challenges separately his two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) for committing an offense that involved three or more firearms, contending that this enhancement cannot be applied in conjunction with his sentence for violating 18 U.S.C. § 924(c)(1)(A). He argues that applying the enhancement to the drug-trafficking violation that was the predicate offense for his § 924(c) conviction creates impermissible double counting, insofar as the firearm that was the basis for his § 924(c) conviction cannot also be counted when determining the number of weapons involved for purposes of the § 2K2.1(b)(1) enhancement. He notes that, "[w]ithout the firearm associated with the § 924(c) conviction, there [were] less than three firearms involved in the instant matter."

13

"Double counting occurs when a provision of the Guidelines is applied to increase punishment on the basis of a consideration that has been accounted for by application of another Guideline provision or by application of a statute." United States v. Reevey, 364 F.3d 151, 158 (4th Cir. 2004). "Double counting is generally authorized unless the Guidelines expressly prohibit it." Id. Application Note 4 to § 2K2.4 provides a double-counting prohibition in the context of § 924(c) convictions:

> If a sentence under th[e] guideline [governing § 924(c) offenses] is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).

U.S.S.G. § 2K2.4 cmt. n.4.

The question here therefore is whether it is double counting prohibited by the Guidelines -- specifically, Application Note 4 to § 2K2.4 -- to impose a consecutive sentence for possession of a firearm in furtherance of a drug-trafficking offense, in violation of § 924(c)(1)(A), and to enhance the offense level for the underlying drug crime on the

14

ground that the offense (including relevant conduct) involved three or more firearms.

In this case, the offense underlying Pineda's § 924(c) conviction was his distribution of cocaine to the CI during the January 25, 2012 controlled purchase -- a crime for which he was separately convicted. In determining his Guidelines range, the probation officer grouped that offense with his drug-trafficking conviction based on the February 8 transaction and his conviction for possessing a sawed-off shotgun and determined that the operable Guideline for that group was § 2K2.1, the Guideline governing the unlawful possession of firearms. As such, when determining Pineda's offense level under § 2K2.1, the district court was prohibited from applying any specific offense characteristic for "possession, brandishing, use, or discharge" of a firearm. U.S.S.G. § 2K2.4 cmt. n.4.

But U.S.S.G. § 2K2.1(b)(1)'s enhancement based on the number of firearms involved in the offense does not qualify as an enhancement "for possession, brandishing, use, or discharge" of a firearm. U.S.S.G. § 2K2.4 cmt. n.4 (emphasis added). Application Note 4 to § 2K2.4 makes clear that a sentence for violating § 924(c) functions as a weapon enhancement, and so no similar weapon enhancement should be applied when determining the sentence for the underlying offense. An enhancement based on the sheer number of firearms involved in the offense,

15

however, is not the same type of weapon enhancement as the one provided for in § 924(c). Rather, it reflects the Sentencing Commission's recognition that a defendant whose offense involved three or more firearms is more dangerous than a defendant who was only accountable for one or two firearms -- just like culpability is heightened if any of the firearms were stolen or had an altered or obliterated serial number, U.S.S.G. § 2K2.1(b)(4). By contrast, § 924(c)(1)(A) punishes a defendant for <u>putting a firearm to a prohibited purpose</u> -- namely, possessing it in furtherance of a crime of violence or a drug-trafficking crime or using or carrying it during and in relation to such a crime, with additional penalties attaching if the firearm was brandished or discharged. <u>See</u> 18 U.S.C. § 924(c)(1)(A). Whether the defendant was accountable for one firearm or ten, however, is completely irrelevant to the commission of the § 924(c) offense.

Thus, because § 924(c) pertains to particular unlawful <u>uses</u> of a firearm while § 2K2.1(b)(1) pertains to the <u>number</u> of firearms involved, these two enhancements punish different types of conduct. We therefore conclude that enhancing a defendant's offense level based on the number of weapons involved in the offense underlying his § 924(c) conviction does not constitute impermissible double counting under the Guidelines. <u>Accord</u> <u>United States v. Terrell</u>, 608 F.3d 679, 683-84 (10th Cir. 2010)

16

(holding that because "the number of weapons involved in the underlying offense to a § 924(c) conviction is a separate type of offense conduct than that punished by § 924(c) itself," "the district court did not engage in double-counting . . . when it applied [an] . . . increase under § 2K2.1(b)(1)(A)" in conjunction with the sentence for violating § 924(c)). But see United States v. Vincent, 20 F.3d 229, 240-41 (6th Cir. 1994) (holding, without discussion, that the district court erred by applying the number-of-weapons enhancement to an offense underlying the defendant's § 924(c) conviction).

V

Finally, Pineda contends that the district court erred in applying a four-level enhancement under § 2K2.1(b)(5) on the ground that he "engaged in the trafficking of firearms." In support of this challenge, Pineda contends that the § 2K2.1(b)(5) enhancement only applies if a defendant transferred two or more firearms to another individual simultaneously, whereas he only sold one firearm at a time.

There is no indication, however, that the Sentencing Commission intended the § 2K2.1(b)(5) enhancement to apply only if the defendant transferred multiple firearms on one occasion. The commentary to § 2K2.1 specifies that the firearm-trafficking enhancement applies as long as two requirements are satisfied.

17

First, the defendant must have "transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual." U.S.S.G. § 2K2.1 cmt. n.13(A)(i). And second, the defendant must have "kn[own] or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual -- (I) whose possession or receipt of the firearm would be unlawful; or (II) who intended to use or dispose of the firearm unlawfully." Id. § 2K2.1 cmt. n.13(A)(ii).

Both requirements are satisfied here. Pineda transferred two or more firearms to the CI, and he "had reason to believe" that the CI "intended to use or dispose of the firearm[s] unlawfully," since he was simultaneously selling cocaine to the CI with the understanding that the CI's intent was to distribute it to others. It is simply irrelevant to the trafficking enhancement that Pineda sold the CI one firearm on one occasion and a second firearm a few weeks later, as opposed to selling him both firearms in a single transaction.

We thus conclude that the district court properly imposed a four-level enhancement under § 2K2.1(b)(5) on the ground that Pineda "engaged in the trafficking of firearms."

18

The judgment of the district court is

AFFIRMED.