**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**No. 18-4308**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

AAZIM LOVE, JR.,

        Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., U.S. District Court Judge. (3:17-cr-00102-JAG-2)

Submitted: March 5, 2019                               Decided: April 23, 2019

Before AGEE, KEENAN and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Gerald T. Zerkin, Richmond, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Stephen E. Anthony, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Aazim Love, Jr. pleaded guilty to one count of aiding and abetting the making of a false statement in acquiring a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 2, and one count of conspiracy to make a false statement in acquiring a firearm, in violation of 18 U.S.C. § 371. The district court sentenced him to 27 months' imprisonment after applying the firearm trafficking enhancement under U.S.S.G. § 2K2.1(b)(5). Love now appeals his sentence, contending the district court erred by applying the enhancement. For the reasons below, we affirm.

I.

This case involves three firearms transactions in which Love participated with Elijah Y. Money and Asia R. Sayles. Money engineered a plan to acquire firearms through third parties in Virginia and redistribute them in New Jersey. At Money's request, Sayles found third parties who purchased firearms at Money's direction and delivered the firearms to him. Love, who was Sayles' boyfriend, assisted them by attending the firearms transactions and then transporting the acquired firearms from Virginia to New Jersey, where Money would distribute the firearms. Money financed the firearm purchases and compensated the third-party purchasers and Love for their participation in the transactions.

Money, Sayles and Love acquired approximately fifteen firearms through three separate transactions. During the third transaction in 2017, Money, Sayles, and Love traveled with a third-party purchaser to Virginia, where the third party purchased seven firearms under their instructions. Money and Love chose not to accompany the third party

2

during her purchase because they feared their presence might prevent a firearm dealer from selling the firearms to the straw purchaser. Instead, Money provided cash to the third party, instructing her to buy as many firearms as possible.

After the transaction, all four of them were driving together toward New Jersey when a Deputy Sheriff from Isle of Wight County, Virginia, performed a traffic stop and searched their vehicle. The Deputy found the firearms, confiscated them, and charged the third-party purchaser with a firearm violation under Virginia state law. Subsequently, Money and Sayles contacted the third-party purchaser asking her to retrieve the firearms from the Sheriff's Department and deliver them to Money in exchange for compensation. Love offered additional assistance to the purchaser, which she declined.

Later, the New Jersey State Police recovered other firearms previously transferred by Money in connection with multiple shootings in New Jersey. The investigations of those shootings revealed that Money's associates, who were convicted felons, unlawfully possessed the firearms. Based on these incidents and the Virginia firearm transactions, the United States filed a criminal complaint against Money, Love, and Sayles. As noted above, Love was charged with two counts relating to making false statements in acquiring a firearm. He pleaded guilty to both counts without the benefit of a plea agreement and agreed to a statement of facts.

Prior to Love's sentencing hearing, a probation officer prepared a pre-sentencing report ("PSR"), which recommended, among other things, a sentencing enhancement based on Love's engagement in firearm trafficking under U.S.S.G. § 2K2.1(b)(5). The probation

officer's sentencing calculation resulted in a Sentencing Guidelines range of 33 to 41 months.

Love raised three objections to the PSR: (1) he should receive a minor-role reduction under U.S.S.G. § 3B1.2; (2) the firearm trafficking enhancement should not apply; and (3) his criminal history category overstated his criminal history. After considering the parties' arguments and the record evidence, the district court sustained the objection for a minor-role reduction but denied the other two objections, adopting a final Sentencing Guidelines range of 27 to 33 months.

In light of this decision, Love advocated for a sentence "somewhere somewhat below where the [G]uidelines are," J.A. 68, but the court declined to do so and sentenced him to 27 months' imprisonment on each of the two counts to run concurrently. The district court explicitly addressed a number of factors that supported the sentence, including the nature and circumstances of the offense, Love's personal background and character, and the need to afford adequate deterrence and protect the public.

Love timely appealed his sentence, and the Court has jurisdiction under 28 U.S.C. § 1291.[*]

---

[*] Love does not challenge the district court's decision to deny his objection to his criminal history category. The only issue on appeal is the district court's application of the firearm trafficking enhancement.

"In assessing whether a district court properly calculated the Guidelines range, including its application of any sentencing enhancements, this Court reviews the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Horton*, 693 F.3d 463, 474 (4th Cir. 2012) (internal quotation marks and alteration omitted). Here, we review the district court's decision for "clear error" because Love primarily challenges the court's factual determination supporting the application of the firearm trafficking enhancement. *See id.* The "clear error" standard is "a very deferential standard of review, allowing us to reverse only if we are left with a definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). After careful review of the record and the parties' arguments, we discern no clear error in the district court's determination and thus uphold the court's application of the firearm trafficking enhancement.

A district court may enhance the sentence of a defendant who has "engaged in the trafficking of firearms." U.S.S.G. § 2K2.1(b)(5). This sentencing enhancement applies if the court finds facts supporting two elements:

> First, the defendant must have "transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual." U.S.S.G. § 2K2.1 cmt. n.13(A)(i). And second, the defendant must have "kn[own] or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—(I) whose possession or receipt of the firearm would be unlawful; or (II) who intended to use or dispose of the firearm unlawfully." *Id.* § 2K2.1 cmt. n.13(A)(ii).

*Untied States v. Pineda*, 770 F.3d 313, 321 (4th Cir. 2014) (alteration in original). This enhancement covers the "defendant's own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 2K2.1, cmt. n.13(B). "The burden is on the government to prove by a preponderance of the evidence that the sentencing enhancement should be applied." *United States v. Steffen*, 741 F.3d 411, 414 (4th Cir. 2013).

Love challenges the application of the firearm trafficking sentencing enhancement, arguing that the Government did not meet its burden to prove that his conduct satisfied its two elements. We address in turn and reject Love's arguments pertaining to each element.

A.

First, Love argues that he did not directly "transfer" firearms to anyone within the meaning of the Guidelines. This argument ignores that the enhancement applies to not only a defendant's direct "transfer" of firearms but also his aiding or abetting of the "transfer," as Love clearly did in this case. U.S.S.G. § 2K2.1 cmt. n.13(B). As the Government contends, Love participated in the underlying transactions intending to deliver the acquired firearms to Money. He admitted to law enforcement that "MONEY was using [him] and SAYLES to find persons to purchase firearms so MONEY could redistribute them to associates of his in New Jersey." J.A. 43.

With this understanding, Love aided or abetted the transfer of firearms from the third-party purchasers to Money by accompanying Money, Sayles, and the third-party purchasers to the firearms transactions in Virginia. Love further assisted with transporting the acquired firearms from Virginia to New Jersey, as evidenced by his presence in the

6

vehicle during the Isle of Wight County traffic stop. After the Deputy seized the firearms in the vehicle, Love offered to help the third-party purchaser retrieve them. As a result of his assistance, Love received compensation from Money. This evidence clearly establishes that Love aided or abetted the transfer of firearms to another individual within the meaning of the Guidelines. *See Pineda*, 770 F.3d at 321.

## B.

Next, Love argues his conduct did not satisfy the second element of the firearm trafficking enhancement because he did not know or have reason to know that the persons to whom Money transferred the firearms could not lawfully possess them or intended to use them unlawfully. Having examined the record and the totality of the circumstances, we conclude otherwise. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985) (holding that a district court's factual findings based on "physical or documentary evidence or inferences from other facts" are not clearly erroneous, as long as "the district court's account of the evidence is plausible in light of the record viewed in its entirety.").

The record demonstrates Love knew or had reason to believe that Money's possession or receipt of the firearms would be unlawful or that Money intended to use or dispose of the firearms unlawfully. Love knew that Money needed his assistance and compensated him for his role because Money and Sayles could not purchase firearms themselves, but needed third parties to do so. Furthermore, as the Government argues— and Love admitted—he was well aware that despite Money's lack of any lawful license to deal in firearms, Money used straw purchasers to acquire firearms in Virginia so that he "could redistribute them to associates of his in New Jersey." J.A. 43. In addition to that

7

knowledge, Love was the boyfriend of Sayles, who knew that Money "need[ed] these firearms because he has been involved in violent altercations with another person" in New Jersey, and was "under the impression that the serial numbers of these firearms would be removed and that the firearms . . . would not be traced back to the persons who bought them for them." J.A. 42. Given Sayles' close relationship to Love and their joint participation in the transactions, Love had reason to believe that Money intended to use or dispose of the firearms unlawfully.

Love's conduct during the firearm transactions also revealed his knowledge. During the last transaction, Love and Money purposely chose not to accompany the third-party purchaser to a sales counter because they understood that a dealer could stop the sale if the dealer discovered the purchaser was acquiring firearms for Money and not for herself. After the Isle of Wight County Deputy seized the firearms, Love refused to participate in any additional firearm transactions because he became "concern[ed] [about] his involvement and the legal ramifications he may face if caught." J.A. 44. Love's behavior, knowledge, and fear of legal consequences also demonstrate he knew or had reason to know that Money could not lawfully receive or possess firearms or that Money intended to use or dispose of the firearms unlawfully. *See Pineda*, 770 F.3d at 322 (holding that the defendant had reason to believe an individual "intended to use or dispose of the firearms unlawfully" because the defendant transferred firearms while selling cocaine to the individual).

Accordingly, we find no clear error in the district court's determination that both elements of the enhancement were satisfied.

Last, Love argues that the application of the firearm trafficking enhancement violated his due process rights because the Government's interpretation of the Guidelines was erroneous, and, even if it were not, he could not have been on notice that Money's transportation of the firearms would violate the Guidelines. "Because resolution of this issue turns primarily upon the legal interpretation of the Sentencing Guidelines, our standard of review is *de novo*." *United States v. Godwin*, 253 F.3d 784, 786 (4th Cir. 2001) (internal quotation marks omitted).

This alternative argument that Love lacked notice is meritless. As discussed above, the record clearly establishes that the firearm trafficking enhancement applies to Love's conduct. To satisfy the firearm trafficking enhancement's elements, Love need not have been on actual notice or have had actual knowledge that Money's conduct was unlawful. Instead, the Guidelines only require that Love had reason to know Money's possession or receipt of firearms would be unlawful, which the record shows that he did. *See* U.S.S.G. § 2K2.1 cmt. n.13(A)(ii).

Regardless, Love received the notice mandated under the law. A defendant must receive notice of a sentencing enhancement so that he has "an opportunity to contest the validity or applicability of the [grounds] upon which the . . . sentencing enhancement is based." *United States v. Hodge*, 902 F.3d 420, 427 (4th Cir. 2018) (internal quotation marks and alteration omitted); Fed. R. Crim. P. 32(d), (i). But when a defendant is fully aware of his conduct and of the potential sentencing enhancements available—as identified in the PSR, for example—he has received adequate notice. *See United States v. Rucker*, No. 96-

4765, 1997 WL 563144, at \*2 (4th Cir. Sept. 11, 1997) (unpublished table decision) (holding that notice is adequate even when a court sua sponte adjusts a Guideline calculation, "at least where the facts relevant to the adjustment are known to the defendant, because the bases for adjustments are limited and are set out in the [G]uidelines"). Here, Love knew about his conduct, received clear notice of the Government's intent to seek the firearm trafficking enhancement, and contested the applicability of the sentencing enhancement before the district court. Accordingly, Love fails to show that he did not receive adequate notice.

We therefore conclude that the district court's decision did not violate Love's due process rights.

IV.

For the reasons stated above, we affirm Love's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*