**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4282**

UNITED STATES OF AMERICA,

> Plaintiff - Appellee,

v.

CARL CLARK, a/k/a Yogi,

> Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Joseph R. Goodwin, District Judge. (2:17-cr-00062-2)

Submitted: March 26, 2019                     Decided: May 28, 2019

Before QUATTLEBAUM and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Brian D. Yost, HOLROYD & YOST, Charleston, West Virginia, for Appellant. Michael B. Stuart, United States Attorney, C. Haley Bunn, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Carl Clark entered into a plea agreement with the Government wherein he agreed to plead guilty to Count 2 of the indictment, alleging distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (2012). In exchange, the Government agreed to dismiss the remaining five counts against Clark, including Count 1, which alleged a conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846 (2012). The district court rejected the plea agreement. Clark thereafter maintained his guilty plea to Count 2, and the district court sentenced him to 135 months' imprisonment. After Clark was sentenced, the remaining charges against him were dismissed on the Government's motion. Clark now appeals, arguing that: (1) the district court abused its discretion when it rejected the plea agreement; (2) the district court erred in enhancing his sentence for possessing a dangerous weapon; and (3) the sentence imposed is substantively unreasonable. We affirm.

As to Clark's first claim, we conclude that even if the district court erred in rejecting the plea agreement, any such error was harmless. Clark received a continuance so he could consider whether to withdraw his guilty plea, and he decided not to do so. J.A. 169-71, 182-83. Moreover, Clark appears to have received the benefit of every material term in the agreement. In particular, the Government promised in the agreement to dismiss the remaining charges against Clark "[f]ollowing final disposition." J.A. 86. And the Government did just that, dismissing with prejudice all the remaining charges against him shortly after sentencing. J.A. 205. Clark also received a full three-point deduction for acceptance of responsibility. J.A. 191. In his brief, Clark identifies only

2

one form of prejudice: he claims that he might have gotten a more lenient sentence if the district court had sentenced him after the other charges were disposed of. Brief of Appellant at 15-16. But the district court gave Clark the option to adjourn the sentencing until after trial, and he declined. J.A. 184. Therefore, any prejudice Clark suffered was not the result of the court's rejection of his plea, but of his own decision to proceed with sentencing on Count 2 alone.

Clark next asserts that the district court erred in enhancing his sentencing range by two levels based on possession of a dangerous weapon pursuant to § 2D1.1(b)(1) of the Sentencing Guidelines. Specifically, Clark argues that, because the firearm at issue was possessed by his coconspirator, Quinton Funk, during the conspiracy alleged in Count 1, and because that conspiracy had concluded when Clark committed the crime of conviction in Count 2, it does not constitute relevant conduct.

"In assessing whether a district court properly calculated the Guidelines range, including its application of any sentencing enhancements, we review the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Fluker*, 891 F.3d 541, 547 (4th Cir. 2018) (cleaned up). Under the Guidelines, courts look not just to the conduct underlying the offense of conviction, but to other "relevant conduct" as well. *See United States v. Pauley*, 289 F.3d 254, 258-59 (4th Cir.), *modified on reh'g on other grounds*, 304 F.3d 335 (4th Cir. 2002). Relevant conduct includes, with respect to other offenses that would be grouped with the offense of conviction under § 3D1.2(d), certain acts or omissions associated with such offenses that "were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG

3

§ 1B1.3(a)(2). Those acts or omissions include, "in the case of a jointly undertaken criminal activity . . . , all acts and omissions of others that were . . . reasonably foreseeable in connection with that criminal activity." USSG § 1.3(a)(1)(B)(iii). Thus, the propriety of the two-point gun enhancement turns on three questions: (1) would Count 1 have been grouped with Count 2 under § 3D1.2; (2) was the conspiracy alleged in Count 1 part of the "same course of conduct or common scheme or plan" as the sale alleged in Count 2; and (3) was possession of the firearm by Clark's co-conspirator "reasonably foreseeable in connection with" the drug conspiracy alleged in Count 1?

We easily conclude that the answer to questions (1) and (3) was yes. Because Count 1 and Count 2 are both offenses where "the offense level is determined largely on the basis of . . . the quantity of a substance involved," they are grouped together. USSG § 3D1.2(d). And it is well established that, absent exceptional circumstances, members of a conspiracy to sell large quantities of drugs for cash can reasonably foresee that their coconspirators will possess firearms. *See United States v. Gomez-Jimenez*, 750 F.3d 370, 381 (4th Cir. 2014).

While question (2) presents a closer call, the district court did not abuse its discretion in concluding that Count 1 and Count 2 were part of the "same course of conduct." Relevant factors in determining whether offenses qualify as part of the same course of conduct include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." USSG § 1B1.3 cmt. n.5(B)(ii). In this case, the Count 1 conspiracy and the Count 2 sale were separated by less than three weeks, providing a strong temporal link. *See United States v. McNatt*,

4

931 F.2d 251, 258 (4th Cir. 1991).  Moreover, the offenses occurred with a high degree of regularity and frequency.  Clark and Funk obtained 4 kilograms of methamphetamine in January 2017; by January 12, 2017, all but 138.87 grams of that methamphetamine had been sold, reflecting a high volume and frequency of sales.  Similarly, after the conspiracy ended, Clark sold methamphetamine on five occasions between March 1, 2017, and March 24, 2017.  *See United States v. Pineda*, 770 F.3d 313, 319 (4th Cir. 2014); *Pauley*, 289 F.3d at 259.

Admittedly, the Government made a relatively weak showing of similarity.  Although Counts 1 and 2 both involved methamphetamine, the crimes had a different modus operandi and involved different individuals and supply sources.  *See United States v. Wall*, 180 F.3d 641, 646 (5th Cir. 1999) (observing offenses did not share common source, supplier, or destination, had different modus operandi, and involved different people).  Nonetheless, one could reasonably conclude that the Government's strong showing of regularity and temporal proximity outweighed the absence of similarity between the offenses.  *See United States v. Hodge*, 354 F.3d 305, 314 (4th Cir. 2004) ("In our view, the Government's strong showing of regularity compensated for the significant temporal gap between the 1996 uncharged conduct and the 1999 offense of conviction, as well as for the absence of a strong showing of similarity."); USSG § 1B1.3 cmt. n.5(b)(ii) (strong presence of one factor may compensate for absence of another).  Therefore, the district court did not abuse its discretion in imposing the two-level enhancement.

Finally, Clark argues that the sentence imposed is substantively unreasonable because an allegedly similarly situated codefendant—Jamie Harmon—received a lesser

sentence. This, Clark claims, created unwarranted sentencing disparities and caused his sentence to be greater than reasonably necessary to comply with the purposes of criminal punishment. *See* 18 U.S.C. § 3553(a). We review the reasonableness of a sentence "under a deferential abuse-of-discretion standard" and examine the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 41, 51 (2007). Any sentence within or below a properly calculated Guidelines range is presumptively substantively reasonable; this presumption is rebutted only "by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors." *United States v. Vinson*, 852 F.3d 333, 357-58 (4th Cir. 2017) (internal quotation marks omitted).

We reject Clark's contention that the sentence imposed created unwarranted sentencing disparities or otherwise represented an unreasonable application of the § 3553(a) factors. First, Clark points to no information demonstrating that the sentence created any national disparities. We focus on such disparities—rather than disparities between codefendants—because "co-defendants have no enforceable right to have sentences that are precisely congruent with one another." *United States v. Quinn*, 359 F.3d 666, 682 (4th Cir. 2004). Second, it is clear from the record that the district court undertook an individualized analysis of Clark's and Harmon's respective culpability and imposed different sentences based on its findings regarding the underlying causes of their criminal behavior. We thus conclude that Clark has failed to overcome the presumption of reasonableness that is afforded his within-Guidelines sentence. *See Vinson*, 852 F.3d at 357-58.

Accordingly, we affirm the district court's judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*