**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4166**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

GENESIS LEE WHITTED, JR., a/k/a Gen, a/k/a Juice Man,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Malcolm J. Howard, Senior District Judge.  (5:15-cr-00372-H-1)

Submitted:  April 2, 2019                                    Decided:  August 21, 2019

Before GREGORY, Chief Judge, and DIAZ and THACKER, Circuit Judges.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

Rudolph A. Ashton, III, DUNN PITTMAN SKINNER & CUSHMAN, PLLC, New Bern, North Carolina, for Appellant.  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Kristine L. Fritz, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Genesis Whitted, Jr. was convicted of conspiracy to distribute cocaine base in 2015. He was sentenced to 35 years in prison, based in part on a history of drug-related conduct that was not part of the charged offense. Whitted challenges this sentence on appeal. First, he argues that his uncharged drug-related acts, some going back to 2008, weren't relevant to the 2015 conspiracy for sentencing purposes. Second, he argues that even if his uncharged acts were relevant, they were based on unreliable evidence. Finally, he says that the district court erred in refusing to grant him a two-level decrease in his offense level, because he accepted responsibility for some of his offenses. For the reasons that follow, we affirm.

## I.

### A.

The FBI and local police had long suspected that Whitted was responsible for several crimes in Fayetteville, North Carolina. They believed that Whitted, the leader of a local Bloods gang, distributed large amounts of cocaine in Fayetteville. They also believed that he and his associates regularly robbed drug dealers and prospective customers of drugs and valuables.

Around 2014, the FBI and Fayetteville police began working with several cooperating witnesses to build a case against Whitted. Soon after, agents installed a camera across from a car wash Whitted owned to monitor his daily activities. As the recordings soon revealed, this was no ordinary car wash: Whitted used it primarily to distribute large

quantities of drugs, mostly cocaine and cocaine base. A confidential informant later agreed to take part in seven controlled purchases from Whitted. Between November and December of 2015, Whitted ultimately sold the informant 35 grams of cocaine base.

B.

In 2016, based on the controlled purchases, Whitted was charged in a superseding indictment with conspiracy to distribute cocaine base, *see* 21 U.S.C. § 846; seven counts of distributing cocaine base, *see id.* § 841(a)(1); and two counts of possessing a firearm in furtherance of a drug trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A).

During Whitted's first arraignment hearing, counsel said Whitted was willing to plead guilty to the drug charges, but not the gun charges. As the hearing continued, however, counsel grew increasingly concerned that Whitted wasn't competent to make an informed plea decision. Counsel also worried that Whitted's family was improperly pressuring him to go to trial. Out of caution, the court ordered a competency evaluation. The evaluator deemed Whitted competent and found that he was exaggerating his psychological symptoms. A cooperating witness later stated that Whitted had hoped to be diagnosed with a mental illness in order to receive a lighter sentence.

At Whitted's second arraignment hearing, he pleaded not guilty to all counts. The court, aware that he previously intended to plead guilty to the drug-related charges, asked several times if he wanted to plead not guilty to every count. Each time, Whitted responded in the affirmative.

Leading up to the trial, Whitted made several attempts to influence witness testimony. For example, he called an old associate and asked him to withdraw prior

3

statements about Whitted's past drug- and gun-related acts.  The associate obliged.  But the call was monitored, and the associate later admitted that a letter repudiating his prior statements was false.

On the eve of trial, Whitted tried to accept a plea offer that the government had tendered some months before.  But the government pointed out that the offer had expired.  And while it wasn't willing to give Whitted a plea deal as favorable as the previous one, the government extended him two new offers.  Whitted refused to accept them and the case went to trial.  At trial, Whitted's attorney only disputed the gun-related counts and conceded guilt on the drug-related counts.  A jury found Whitted guilty on every count except for one gun-related charge.

## C.

Following the jury's verdict, the probation office issued its presentence investigation report ("PSR").  The PSR recommended a sentence based in part on twenty or so unlawful acts between 2008 and 2015.  Whitted had not been charged for these acts, but the probation office determined they were relevant conduct under the United States Sentencing Guidelines ("U.S.S.G.").  The government learned about these acts from interviews with sixteen cooperating witnesses and police reports from three traffic stops. The acts related to Whitted's (1) drug trafficking operation, which included buying, selling, manufacturing, and stealing drugs, mainly cocaine and cocaine base; and (2) armed robberies of drugs dealers and prospective customers.

For example, one cooperating witness sold Whitted cocaine base on numerous occasions between 2008 and 2014.  These sales totaled at least 1,645 grams of cocaine base

4

(though the witness estimated the amount could be as high as 2,145 grams). Another witness said he bought 510 grams of cocaine base from Whitted between 2011 and 2013. And another said he saw Whitted cook at least 893 grams of cocaine base between 2014 and 2015. Whitted and his associates also committed eight robberies (all to steal drugs or drug proceeds) between 2008 and 2015, at a pace of about one per year. In each robbery, they threatened victims with firearms.

Based on Whitted's past acts, the PSR recommended holding him responsible for a converted drug weight of 10,398.86 kilograms.[1] It also applied sentencing enhancements based on Whitted's use of physical restraint and his leadership role in the criminal operation. *See* U.S.S.G. §§ 3A1.3, 3B1.1(a). It applied a criminal history of III based on Whitted's past criminal convictions and his commission of criminal acts between 2008 and 2013, while he was on probation for state offenses. *See* U.S.S.G. § 4A1.1(d). These criminal acts were among the uncharged acts that were deemed relevant conduct and treated as part of the instant offense for sentencing purposes. Finally, the PSR declined to recommend an acceptance of responsibility adjustment. *See* U.S.S.G. § 3E1.1.

The district court adopted the recommendations in the PSR. Although Whitted's guidelines range was life imprisonment, the court varied downward and sentenced him to 35 years in prison. Whitted timely appealed his sentence.

---

[1] In all, the converted drug weight was based on 8984.3 grams of cocaine or cocaine base, 3,628.8 grams of marijuana, and 42.525 grams of heroin. The PSR didn't count drugs and currency attributed to Whitted by witnesses where there was a possibility of double counting or the drug amount was unascertainable.

II.

We review the district court's factual findings at sentencing for clear error and its evidentiary decisions, including credibility determinations, for abuse of discretion. *United States v. Pineda*, 770 F.3d 313, 318 (4th Cir. 2014) (citation omitted).

Whitted first argues that the district court clearly erred by finding his uncharged drug-related acts relevant to his charged 2015 drug trafficking conspiracy. He next asserts that even if his past acts were relevant, the district court abused its discretion by crediting the accounts of these acts provided by the government's witnesses. He finally argues the district court clearly erred by finding he didn't accept responsibility for his drug-related counts. We find none of his arguments persuasive.

A.

Under the sentencing guidelines, district courts may sentence defendants not only for the conduct for which they were convicted, but for any conduct deemed "relevant" to the counts of conviction. U.S.S.G. § 1B1.3. For offenses like the drug crimes Whitted was convicted of, the guidelines define relevant conduct to include "all acts and omissions that [are] part of the same course of conduct . . . as the offense of conviction." *Id*. § 1B1.3(a)(2).

To determine whether Whitted's past acts are part of the same course of conduct as his 2015 drug trafficking conspiracy, we ask whether they are part of an ongoing, identifiable pattern of criminal conduct. *Id*. § 1B1.3 cmt. n.5(B)(ii). Factors to consider include (1) the degree of similarity between the offenses, (2) the regularity of the offenses,

and (3) the time interval between them.  *Id.*  When one factor is lacking, there must be a stronger presence of another to compensate.  *Id*.  For example, in *United States v. Hodge*, a four-year gap between several uncharged cocaine sales and the charged offense of cocaine possession was overcome by the fact that the defendant continuously sold cocaine throughout the intervening period.  354 F.3d 305, 313–15, (4th Cir. 2004).

Whitted argues the district court clearly erred by finding his uncharged drug-related acts relevant to his charged 2015 drug trafficking conspiracy.  His principal contention is that the time interval between the uncharged and charged acts is too great.  He also appears to argue that the past acts didn't occur regularly, and that they were dissimilar to the charged conspiracy.

The government doesn't seriously dispute that the time interval is substantial.  But it argues that its investigation of Whitted, as well as its interviews with sixteen witnesses, show that he engaged in an ongoing pattern of conduct from 2008 to his arrest.  This scheme involved regularly buying, selling, manufacturing, and stealing drugs (mainly cocaine), often by violent means.

We too acknowledge the substantial time interval between Whitted's charged acts and most of the uncharged ones.  But we agree with the government that the evidence of similarity and regularity supports the district court's decision to consider the uncharged acts.

In our view, the record shows a similarity between the charged and uncharged acts because Whitted was at all times aiming to further his drug trafficking operation, using similar methods, persons, and locations.  Whitted's uncharged acts primarily involved

7

buying, selling, or manufacturing drugs. He generally shared in the profits of these drug transactions, which all occurred in the Fayetteville area and usually involved cocaine or cocaine base. And the purpose of the uncharged robberies was to steal drugs and drug proceeds from dealers or prospective customers.

As for regularity, Whitted conducted multiple drug transactions each year from 2008 to 2015. He likewise committed a drug-related robbery in almost every year between 2008 and 2015.

Whitted's long and unbroken chain of drug transactions and related robberies bore significant similarities and served a common purpose. We are therefore satisfied that Whitted's uncharged acts form a single, ongoing course of conduct, even though they extend back several years before the charged conspiracy.

## B.

We next turn to Whitted's two evidentiary challenges. He first contends that the district court abused its discretion by finding the witnesses' descriptions of his uncharged acts sufficiently reliable. We disagree. The statements of two cooperating witnesses established most of the drug weight that the PSR attributed to Whitted. One of the witnesses testified at trial, and the other was prepared to do so. Their willingness to testify supports the finding that they were reliable. And their statements were consistent with each other (and with the statements of the fourteen other cooperating witnesses) in all

8

material respects.  Finally, their statements were consistent with the trial evidence, which suggested that Whitted was an experienced drug manufacturer and dealer.[2]

Whitted's second argument attacks the PSR's drug calculation.  He points us to *United States v. Bell*, in which we warned that where drug calculations are "based only upon 'uncertain' witness estimates, district courts should sentence at the low end of the range to which the witness[es] testified."  667 F.3d 431, 441 (4th Cir. 2011) (citation omitted).  But that's precisely what the district court did here by adopting the PSR's recommendation.  Whenever cooperating witnesses made imprecise estimates, the PSR adopted the amount at the low end of the range.  For example, one witness estimated that Whitted sold him between 1,645 and 2,145 grams of cocaine base, and the PSR used the smaller figure.  Whitted misinterprets *Bell* when he suggests that it prohibits the use of witness estimates about drug quantities altogether.  We expressly noted that sentencing courts may rely on "hearsay testimony of lay witnesses as to the quantities attributable to a defendant." *Id.*

The district court therefore didn't abuse its discretion by finding the cooperating witnesses' statements and drug estimates reliable.[3]

---

[2] Whitted also notes the evidence is hearsay, which he suggests is per se unreliable for sentencing purposes.  But sentencing courts aren't bound by the rules of evidence. U.S.S.G. § 6A1.3(a); *United States v. Crawford*, 734 F.3d 339, 342 (4th Cir. 2013) (collecting cases).

[3] Whitted's remaining arguments each depend on the premise that his uncharged conduct either is not relevant for sentencing purposes or was not established by reliable evidence.  Accordingly, we reject them for the same reasons given above. *See* U.S.S.G. § 1B1.3(a) (providing that unless otherwise specified, relevant conduct is to be used in (Continued)

## C.

We finally consider Whitted's assertion that he was entitled to a two-level reduction in his offense level for acceptance of responsibility. When a defendant clearly demonstrates that he has accepted responsibility for his offenses, he is entitled to a two-level decrease in his offense level. U.S.S.G. § 3E1.1(a). We review the district court's decision to deny this reduction for clear error. *United States v. Kise*, 369 F.3d 766, 771; *see also* U.S.S.G. § 3E1.1 cmt. n.5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."). The commentary to the guidelines directs district courts to consider several nonexclusive factors, including whether the defendant admits to committing the offense of conviction and "any additional relevant conduct." U.S.S.G. § 3E1.1 cmt. n.1(A).

Whitted argues that his is one of those "rare" cases where, despite having gone to trial on both the drug and gun charges, he should nonetheless receive an acceptance of responsibility adjustment for the drug counts. *Id*. § 3E1.1 cmt. n.2. He first argues that the government and his family thwarted his efforts to enter an acceptable plea agreement. Appellant's Br. at 24–25. Second, Whitted argues that because his trial attorney conceded guilt on the drug counts, he accepted responsibility for them. We find his arguments unpersuasive.

---

applying sentencing adjustments and enhancements); *United States v. Self*, 132 F.3d 1039, 1043 (4th Cir. 1997) ("As a general matter, then, the term 'offense' refers to the offense of conviction including relevant conduct within the meaning of § 1B1.3 . . . .").

With respect to alleged government interference, Whitted points us to his first arraignment hearing where he said he was willing to plead guilty to the drug-related charges. Yet at his second arraignment hearing, he stated (more than once) that he wanted to go to trial on *both* sets of charges. He also says he tried to accept a plea offer before his trial began. This plea offer, however, had already expired. The government extended two additional plea offers to Whitted. But he rejected both because they weren't as favorable as the earlier offer. It therefore isn't clear to us how the government thwarted his efforts to reach a plea agreement.

As for the alleged familial interference, the district court did note that Whitted's family had been giving him detrimental legal advice (presumably to go to trial). But beyond that, the record and Whitted's briefs aren't clear on how Whitted's family interfered with his decision making process. We therefore decline to reverse the district court's determination on this basis alone.

Whitted's next point is that his trial attorney conceded he was guilty of the drug counts. He relies on *United States v. Hargrove*, in which we held that a district court wasn't barred from affording a defendant an acceptance of responsibility adjustment where he pleaded guilty to his drug-related charges, but not his gun-related charges. 478 F.3d 195, 204–05 (4th Cir. 2007). But unlike *Hargrove*, Whitted went to trial on both his drug and gun charges. Therefore, while *Hargrove* is instructive, it is not dispositive.

We are satisfied that, under these circumstances, the district court did not clearly err in refusing to grant Whitted a two-level reduction for acceptance of responsibility. Even today, Whitted still challenges not just whether the uncharged conduct is legally relevant,

11

but also the evidence establishing that the conduct occurred. He also attempted to alter witness testimony before his trial. And he apparently tried to mislead the court about his mental competence to get a lighter sentence. This is a far cry from accepting responsibility.

## III.

For the reasons given, we affirm Whitted's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*